[No. 3955.   Decided January 7, 1902.]

LYDIA L. CADE, *Appellant*, v. THE HEAD CAMP, PACIFIC JURISDICTION, WOODMEN OF THE WORLD *et al.*, *Respondents*.

BENEFIT SOCIETIES — CHANGE OF BENEFICIARY — VESTED INTERESTS.

The fact that a member of a benefit society procures a policy of insurance on his life in which his wife is named as beneficiary, and gives her the policy with intent that it shall be hers, paying the dues thereon with community funds, would not give the wife such a vested interest therein as to deprive the husband of the power of substituting another beneficiary.

SAME — FAILURE TO COMPLY WITH BY-LAWS — FRAUD UPON BENEFICIARY.

The by-law of a benefit society requiring the insured to surrender his certificate of insurance upon making a change in the beneficiary, or make affidavit to its loss, in order to procure a new certificate, is a regulation for the protection of the society, and the fact that a husband who had given a benefit certificate to

his wife afterwards, without her knowledge, made affidavit to the society of the loss of the certificate, and had a new one issued with a substituted beneficiary, would not establish fraud against the wife, inasmuch as the substitution of beneficiaries could have been made against her consent.

SAME — CONTRACT BETWEEN INSURED AND BENEFICIARY — EFFECT OF GIFT OF CERTIFICATE.

The fact that a husband gave his wife a benefit certificate in which she was named as beneficiary, with the intent that it should be hers absolutely, would not bring the case within the rule that where contracts are made between the insured and the beneficiary the insured has no right to substitute a new beneficiary, since such intent does not amount to a contract and falls within the same rule as that whereby a testator is permitted to change devisees in his will.

PLEADING — GENERAL AVERMENT OF FRAUD — SUFFICIENCY.

A complaint which alleges fraud by mere general averment, without setting forth any of the facts upon which the averment is predicated is not definite enough to permit the introduction of proof.

Appeal from Superior Court, King County.—Hon. BOYD J. TALLMAN, Judge. Affirmed.

*Herbert E. Snook,* and *Richard Winsor,* for appellant. *Hastings & Stedman,* for respondents.

The opinion of the court was delivered by

DUNBAR, J.—The complaint states in substance that Walter Cade and Lydia L. Cade, the appellant, were married on the 11th day of August, 1896; that in 1898, during said coverture, said Walter Cade became a member of what is known as "Home Camp," which is a lodge or camp subordinate to the respondent association, and thereupon took out a benefit certificate, No. 52,597, in the said Head Camp, Pacific Jurisdiction, Woodmen of the World, in the sum of $2,000, payable to his wife; that the certificate was delivered by him to his wife and left in her possession, and

he never asked her for it, nor requested it; that the assessments were paid by him with community property; that afterwards, without any knowledge on the part of his wife, he clandestinely procured a new benefit certificate by representing to the association that his former certificate was lost, and swore to an affidavit that it was lost; that in the second certificate his father and mother, Alfred and Fannie M. Cade, respondents herein, were named as beneficiaries in the sum of $1,000 each; that Cade and his wife continued to live together until the day of his death, which occurred on the 19th day of December, 1900; that the wife did not learn of the change of beneficiary until she applied for the benefits under her policy, when she discovered that her husband had substituted his father and mother as such beneficiaries. Proof of death was furnished the association, and on demand it refused to pay the insurance to the widow, but stated it would be paid to the father and mother of the deceased. The widow thereupon brought this suit in the equity department of the superior court, King county, against said association and said Alfred and Fannie M. Cade, to restrain said association from paying said $2,000, or any portion thereof, to said Alfred and Fannie M. Cade; to declare said second benefit certificate null and void; to declare the first benefit certificate in full force and effect; and for a decree that she might recover from said association the sum of $2,000, with her costs. She alleged that she was at all times during her marriage with Walter Cade dependent upon him for support, and that the said Alfred and Fannie Cade were not in any wise dependent upon him for support; that they by undue means and influence had caused him to change the beneficiary from his wife to them; that said change was not his own intelligent act nor effected by his own volition;

that he had made a false affidavit to procure said second benefit certificate; that he had not complied with the constitution or by-laws of said association in any respect, while attempting to effect said change; and that all of the assessments, fees and dues had been paid by him with community money, the product of the joint labor and efforts of said Walter Cade and this appellant, his wife. Respondents Alfred and Fannie Cade demurred to appellant's second amended complaint upon the ground that it did not state facts sufficient to constitute a cause of action, and the court sustained their demurrer. Appellant thereupon electing to stand upon said second amended complaint, and refusing to plead further, and the respondent association having paid the sum of $2,000 into court to abide the decree of the court, judgment was pronounced and entered dismissing said complaint and directing the clerk to forthwith pay over said sum of $2,000 to the said Alfred and Fannie Cade, in equal parts, allowing them judgment against appellant for their costs, and directing execution to issue therefor. From such judgment and decree appellant prosecutes this appeal.

The assignment of error is the action of the court in sustaining the demurrer to the second amended complaint. The contention of the appellant is that where a husband insures his life in a benefit society for the benefit of his wife, with whom he continues to live until his death, and the assessments and dues are paid by him with community money, he cannot deprive her of the insurance by a change of beneficiary without her consent, particularly when such change is in favor of mere volunteers, and especially when he delivers the policy or benefit certificate to her and makes her a gift of it; that in such instance she becomes vested with such an interest in the same, or

at least has such equities therein, that he cannot divest her of it by a change of beneficiary without her consent; that in this instance the by-laws of the society were not fol·lowed, which by-laws provide that if a member at any time desires to change his beneficiary he shall deliver to the clerk of his camp his benefit certificate, with written instructions indorsed thereon above his signature, stating the change desired in the name of the beneficiary, and requesting the head clerk to cause a new benefit certificate to be issued in accordance therewith, or, in case the benefit certificate is lost, destroyed, or beyond the mem·ber's control, that the member must make an affidavit to that effect waiving all claims under the old certificate.

The main question in this case is whether the beneficiary, in this instance the appellant, had such a vested interest in the policy as would prevent the insured from revoking it or naming a new beneficiary. We think that she had not, and an examination of the authorities cited by the appellant convinces us that such is the case. *Grimbley v. Harrold,* 125 Cal. 24 (57 Pac. 558, 73 Am. St. Rep. 19), the first case cited by appellant, has no bearing upon this case; for, while it was held that the beneficiary had such an interest, it was because there was a contract agreement to that effect between the assured and the beneficiary. The testimony in that case showed that the plaintiff and first named beneficiary, at the request of the assured, left her home in England and came to the state of California, where the assured resided, for the purpose of caring for him in sickness. He proposed to make some provision for her, saying, among other things, that he had some papers he wanted her to have. The court found that it was agreed between Shelton, the assured, and the plaintiff, that she should thereafter pay all his dues to said

order and all assessments levied by it against him, that she should be the beneficiary to receive the said sum of $2,000 on the same, and that he would not change his certificate in that behalf; that she did pay such dues and undertook her part of the agreement with Shelton, cared for him, and performed her promises, except as prevented by Shelton from so doing. Under such a state of affairs the court would naturally enforce this contract, as it would any other contract where there had been a full performance on the part of the party claiming its enforcement.

In *Maynard v. Vanderwerker,* 24 N. Y. Supp. 932, it was held that where a person became a member of a mutual benefit association under an agreement with the person named in the certificate as a beneficiary that the beneficiary was to pay all the assessments, and they were so paid, the beneficiary acquired a vested interest in the certificate, and the member could not afterwards make another designation. But even this last case was against the great weight of authority, as we shall hereafter see.

*Supreme Council v. McGinness,* 59 Ohio St. 531 (53 N. E. 54), comes nearer announcing the rule sustaining the appellant's contention than any other cited, although this case was decided more on the technical ground that the relationship of the brother, who was the claimant under the last certificate, standing alone, would be wholly insufficient, not falling within the provisions of the charter which designated the classes of persons to be benefited, and it was held that the relation of brother, standing alone, would be wholly insufficient, as not falling within the term "family," that the member would be without power to select as a beneficiary one not so designated, and the corporation equally without power to accumulate a fund for a person other than the classes so named.

In *Jory v. Supreme Council*, 105 Cal. 20 (38 Pac. 524, 26 L. R. A. 733, 45 Am. St. Rep. 17), it was decided that if sound equities exist in favor of the original beneficiary of an insurance certificate the insurer is estopped to substitute a second beneficiary whose status is purely that of a volunteer. In that case, however, the claim of the first beneficiary was not sustained, and it was held that, in the absence of contract, the payment of insurance assessments by the beneficiary is gratuitous, and creates no equities in his favor which are available against one afterwards substituted as beneficiary; that, where by the rules of the insurer the insured has a right to make a substitution of beneficiaries on surrendering the original certificate, equity will not allow a beneficiary who has possession of the certificate and refuses to surrender, with intent to prevent such substitution, to profit by her own wrong in preventing a compliance with the rules; and, further, that where the by-laws of a benefit insurance society allow the insured to change the beneficiary in the certificate on surrendering it and complying with certain rules, and the insured complied with all the other rules, but did not surrender the certificate because the first beneficiary had possession thereof and refused to give it up, equity will, as between the rival beneficiaries, consider the rules complied with and the substitution made. In this case it is evident that the requirement that, in case the benefit certificate is lost or beyond the member's control, the member should make an affidavit to this effect and waive all claims under the old certificate, is for the benefit and protection of the society, and is not a matter in which the original beneficiary is interested. The first provision is that he shall deliver to the clerk of his camp his benefit certificate. When so delivered, as a matter of course, the

company is protected from any claim under such certificate, and if it is not delivered the other provision is simply as a protection against a claim growing out of the first certificate; and if the assured had the power to change the beneficiary with her knowledge and without her consent, which the last case quoted confirms, the fact that she did not have the knowledge is of no importance. So that we think there is nothing in this contention in relation to the failure of the assured to strictly comply with the by-laws in this respect.

All that is decided in *Adams v. Grand Lodge,* 105 Cal. 321 (38 Pac. 914, 45 Am. St. Rep. 45), is that where a certificate of insurance in a mutual benefit association, made payable to a firm to which insured is indebted, is intended by all parties to be for the benefit of the firm, the firm will, as against the heirs of the insured, be entitled to the proceeds of the certificate, though the nominal beneficiary died before the insured. A reading of this case shows conclusively that it does not bear upon the questions under discussion here.

We are unable to see that *Hoeft v. Supreme Lodge,* 113 Cal. 91 (45 Pac. 185, 33 L. R. A. 174), sustains in any way the appellant's contention. In that case the insured procured a certificate to be issued in the name of his first wife, the mother of the children who are parties to the litigation, and upon her death a certificate was issued in favor of the children. In the course of time he married again, and thereafter surrendered the certificate in favor of them, and caused a certificate to be issued in favor of his second wife. In that case, as this, it was averred that the change was accomplished with fraudulent representations, undue influence, and duress practiced and exercised upon their father by his wife, the plaintiff in the case.

The court remarks (and the remark might be applied to this case):

"The specific averments to support this charge are to the last degree meager and inconclusive, but passing that, under an assumption of their sufficiency we come to consider whether a cause of action is stated. Defendants do not plead any contract with their deceased father, or any special equities which would deprive him of the right to make a change, but stand upon the ground that they may contest because the change was procured by fraud. But if it was a fraud, did they have a right to complain? Clearly they had not, unless either by contract or in law they had some vested interest or right in the certificate which had formerly been taken out in their favor. They claim no such vested interest by contract. If it exists at all, then, it exists by operation of law. But such rights are either constitutional or statutory, and we are referred to no law which secures to them a right of action for such a cause. If they had a vested right in the certificate as such, then the insured himself, of his own volition, and without the fraudulent contrivance of a third person, could not substitute a new beneficiary. But this is not, and cannot be claimed, for the contract is between the order and the insured. The beneficiary's interest is the mere expectancy of an incompleted gift which is revocable at the will of the insured, and which does not and cannot become vested as a right until fixed by his death."

It is claimed by the appellant that special equities exist in this case which a court of equity will take cognizance of. The only equity, however, that is pleaded, is the fact that the first beneficiary named was the wife of the assured. That fact would not appeal any stronger to a court of equity than would the rights of the children of a deceased wife, who was the first beneficiary of the assured, especially when, as in this case, the beneficiaries under the last certificate were the father and mother of the assured,

while in the case just cited the beneficiary was the second wife and step-mother of the children claiming.

Neither do we think the quotation cited by appellant from 1 Bacon on Benefit Societies and Life Insurance, § 289, sustains her contention, but that on the contrary it rather opposes it.   That author says:

"The distinctions between the beneficiary orders, or societies, and the regular life insurance companies nowhere appear more plainly than when we consider the rights of the beneficiary named in the certificate or policy.   This is because of the fundamental differences in the contracts of these two classes of organizations which we are about to discuss in this place.   In a policy of life insurance the undertaking is with the assured and the stipulated sum is payable to him upon the contingency named,—the ending of the life of the insured.   Owing to the form of the contract the rights of the person to whom the insurance is to be paid become at once vested when the policy is delivered and cannot be altered or affected except by his consent.   The member of a beneficiary organization, on the other hand, as we have seen, has no property interest in the benefit, but only the naked power of designating some one to receive it.   This designated recipient also has no property, nor vested rights, in the benefit, because his interest is contingent and uncertain, the power of the member to revoke the appointment and substitute a new beneficiary being specially reserved by the laws of the society, which laws enter into and form a part of the contract."

Without especially reviewing the other cases cited by appellant, all of which we have examined, we think that none of them are in point.   There is a class of cases holding that the beneficiary cannot be changed after the death of the assured; but that holding, of course, is upon a different principle from the one involved here, and the question of the power of revocation is not involved in such

cases. This case could well be decided under the rule announced by this court in *Thomas v. Grand Lodge,* 12 Wash. 500 (41 Pac. 882), where the distinction between the interests of the assured in a regular life insurance policy and the beneficiary under a certificate in a mutual benefit society was pointed out, and it was held that in the former a vested right obtained and in the latter it did not. In discussing a certain by-law the court said:

"If this was properly in evidence there could be no question about the right of the member to so control the benefit that the interest of the beneficiary named in the certificate would be only one of expectancy, and even if it was not in evidence it will be presumed that he had full right to control the benefit until the contrary is made to appear."

After discussing the authorities *pro* and *con* on the question, this court adopts the rule announced by the supreme court of Indiana in *Presbyterian Mutual Assurance Fund v. Allen,* 106 Ind. 593 (7 N. E. 317), where it is said:

"The weight of authority, as will appear from an examination of the cases cited, is in favor of the general doctrine that beneficiaries may be changed in cases where policies like the one before us are issued by such associations as the present, and that in this respect such policies are not governed by the general rule which governs ordinary insurance contracts."

Much more is said by the court in support of the same doctrine. The authorities are outspoken and overwhelming to the effect that the beneficiary has no vested right in the certificate and that the assured may change it at will.

In *Masonic Mutual Benefit Society v. Burkhart,* 110 Ind. 189 (10 N. E. 79), it was held that a beneficiary acquires no vested rights to the benefits which are to accrue upon the death of a member of a mutual benefit and

charitable association until such death occurs, and that a member may exercise the power of appointment without the consent of such beneficiary, and without restriction other than such as may be imposed by organic law or the rules and regulations of the society. In this case it was also alleged that the cancellation of the original and the substitution of the new certificate in its stead were both without the knowledge or consent of the plaintiff, and the payment by the plaintiff of all dues was also alleged; but it was held that that made no difference in the right of the assured to change the beneficiary. To the same effect is *Grand Lodge v. Kohler,* 106 Mich. 121 (63 N. W. 897), and *Delaney v. Delaney,* 175 Ill. 187 (51 N. E. 961). In the latter case the court said:

"It would seem to follow, as a necessary corollary from the doctrine, that the certificate is a contract between the society and the member, and not between the member and the beneficiary, that the society and the member can modify or change their contract in any way satisfactory to themselves,"—

holding that it was only an expectancy that the beneficiary owned in the certificate prior to the death of the assured, and that it was immaterial whether or not the requirements of the by-laws upon the subject of changing the beneficiary were complied with; that the member and the society had the right to waive a compliance and agree upon any new beneficiary in any manner satisfactory to both those parties,—citing Bacon on Benefit Societies, § 308; *Splawn v. Chew,* 60 Tex. 532; *Martin v. Stubbings,* 126 Ill. 387 (18 N. E. 657, 9 Am. St. Rep. 620), and *National Mutual Aid Society v. Lupold,* 101 Pa. St. 111.

In *Moan v. Normile,* 56 N. Y. Supp. 339, it was held that a member of a beneficial association, whose certificate was made payable to his wife and was in her possession,

perpetrated no fraud on her by having another substituted as beneficiary without surrendering the certificate; the member having a right to make a change without her consent, and the association the power to waive the surrender which was required by its constitution. To the same effect are *Hirschl v. Clark,* 81 Iowa, 200 (47 N. W. 78, 19 L. R. A. 841), and *Barton v. Provident Mutual Relief Ass'n.,* 63 N. H. 535 (3 Atl. 627).

It will be borne in mind that all the cases above mentioned are cases where, as in this instance, the wife was the first beneficiary and a new beneficiary had been appointed by the assured, so that the equities which are claimed by the wife in the case at bar apply as well in the cases cited; the circumstances in all the cases, of course, being more or less different. But the only equitable circumstance pleaded and contended for in this case is the fact that the first beneficiary was the wife of the assured.

So far as the allegation in the complaint of fraud is concerned, it is not definite enough to be maintained; no circumstances being pleaded to support the conclusion pleaded. It is a mere general averment without setting forth any facts upon which the averment is predicated. 9 Enc. Pl. & Pr., 686, 687. In addition to this, if there was no vested right in the appellant, no fraud could be perpetrated upon her by changing the beneficiary. *Hoeft v. Supreme Lodge,* 113 Cal. 91 (45 Pac. 185, 33 L. R. A. 174).

The fact that the beneficiary paid the assessments from community property does not deprive the assured of the right to change this certificate to a new beneficiary, and would not deprive him of it under the authorities, even if the beneficiary had paid the assessments herself. In *Masonic, etc., Ass'n v. Tolles,* 70 Conn. 537 (40 Atl. 448), it

was held that a beneficiary of an insurance policy has no vested interest in the policy prior to the insured's death, even though he pay dues on the policy with the expectation of sharing the benefits. In *Masonic Benevolent Ass'n v. Bunch*, 109 Mo. 560 (19 S. W. 25), it was held that the right of the member to change the beneficiary without the latter's consent is not affected by the fact that such beneficiary has paid the assessments and has possession of the certificate. To the same effect are many other cases too numerous to review.

It is insisted by the appellant that the statement in the complaint that the insured gave the certificate to her with the intent that it should be hers absolutely brings the case within the rule announced in cases where contracts were made between the insured and the beneficiary. But, even conceding that intent in a civil action could be pleaded as it is here, it falls far short of an allegation of a contract, and amounts to nothing more than an intent that is expressed in a will by the testator. In such instance it must be the intent that the property shall go where it is devised; but it will not be questioned that the testator has a right at any time to revoke the will and make new devisees.

We think that, under the overwhelming weight of authority, the judgment in this case must be affirmed.

REAVIS, C. J., and WHITE, MOUNT, ANDERS, FULLERTON and HADLEY, JJ., concur.