[No. 6279. Decided December 20, 1906.]

LOUIS BERNHEIM, *Respondent*, v. MALCOLM EVERETT MARTIN, *Appellant*.[1]

INSURANCE—MUTUAL BENEFIT INSURANCE—RIGHT TO CHANGE BENE-FICIARY. There is no vested right in favor of a beneficiary in mutual benefit insurance, and the insured may change the beneficiary.

SAME—CHANGE OF BENEFICIARIES—WHEN EFFECTED. Where the insured in a mutual benefit certificate, pursuant to an agreement with her husband, had done all that was required by the by-laws to effect a change of beneficiaries, by surrendering the certificate and making due application, the change is effected, although the supreme secretary had not issued a new certificate as required by the by-laws, but requested the insured to sign other papers in a certain way in conformity with a custom of his office, and the insured had, while sick, refused "to sign any more papers" until she got well, it not appearing that she had changed her mind in regard to the beneficiaries, and that no rule or by-law required the further signatures.

Appeal from a judgment of the superior court for King county, Morris, J., entered February 19, 1906, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action to determine the beneficiary under a policy of life insurance. Affirmed.

1Reported in 88 Pac. 106.

*Howard M. Hall, A. A. Anderson*, and *Russell R. Farrell*, for appellant.

*J. B. Quinn*, for respondent.

MOUNT, C. J.—This action was brought by the plaintiff, claiming to be the beneficiary under a policy of insurance, issued by the Modern Brotherhood of America, upon the life of Elma B. Martin, deceased. The defendant, Malcolm Everett Martin, a minor son of the deceased, controverted the claim of the plaintiff, and claimed to be the sole beneficiary under the policy of insurance. This was the issue in the case. The trial court found in favor of the plaintiff. The defendant Malcolm Everett Martin appeals.

There is little or no dispute about the facts, which are: Prior to October 26, 1904, Elma B. Martin was a widow having a minor son, the appellant. At that time she had two policies of insurance in which the minor son was named as beneficiary. She was engaged to be married to the respondent, who also held two policies of insurance in which his mother was named as beneficiary. Shortly prior to the 26th day of October, 1904, the said Elma B. Martin and her fiance, the respondent, agreed to make a mutual interchange of beneficiaries in one of the policies held by each. The respondent agreed to make the said Elma B. Martin beneficiary in place of his mother, in a policy held by him in the Modern Woodmen of America, and Elma B. Martin agreed to change her beneficiary from her son, Malcolm Everett Martin, to respondent, in a policy held by her in the Modern Brotherhood of America. The respondent and said Elma B. Martin were then married on the 26th day of October, 1904. Thereafter, pursuant to the agreement, respondent duly changed the beneficiary in the policy held by him from his mother to his wife, and a certificate issued accordingly. Thereafter, Mrs. Martin, then Mrs. Bernheim, in order to make the change agreed upon, took her policy of insurance to the secretary of the local lodge at Ballard, where she was a mem-

ber of the Modern Brotherhood of America, and directed the secretary of the lodge to fill out the surrender blank on the back of the certificate provided by the insurer for a change of beneficiaries. The blank was filled out under Mrs. Bernheim's directions, as follows:

"Ballard Lodge, No. 1029. M. B. A. November 17, 1904.

"I, Elma B. Martin, being the same person to whom this certificate was issued, hereby authorize the board of directors to cancel this certificate and issue a new one for $1,000, payable to Louis Bernheim who is related to me as husband. I hereby declare that I have complied with the by-laws of this fraternity and all its regulations in the presence of the witnesses whose names are attached hereto.

"(Signed)     Elma B. Martin.
"Witness: W. O. Miller, Lodge President.
"Witness: E. M. Rainey, Lodge Secretary."

After this certificate had been executed as above, on the back of the policy, Mrs. Bernheim directed the secretary to forward the same to the supreme secretary at Mason City, Iowa, to be cancelled and a new certificate issued, naming her husband as beneficiary. The policy was duly sent by mail and received by the supreme secretary, who returned it to the lodge secretary at Ballard, with two slips, one a duplicate of the other, which he directed to be executed. The secretary of the local lodge at Ballard sent the policy and slips to Mrs. Bernheim to be executed by her. Mrs. Bernheim filled in the blanks herself, and signed these slips, "Elma B. Bernheim," but did not sign her former name, "Elma B. Martin." The policy with these slips was again forwarded to the supreme secretary at Mason City, Iowa, who again returned the policy to the local lodge secretary, requesting her to have Mrs. Bernheim sign the name of "Elma B. Martin" to the slips. In the meantime Mrs. Bernheim became sick, and was taken to a hospital. While she was there the secretary of the local lodge gave the policy and slips to Mrs. Bernheim's father, who retained them in his possession.

Thereafter, Mrs. Bernheim improved somewhat and was taken to her home in a carriage. Her father rode with her in the carriage. About the time the carriage arrived at her home, her father told her that the policy had again been returned. She thereupon said: "I am not going to sign any more papers now." Another witness testified that, after that time, Mrs. Bernheim talked to her about the policy, and said: "I ain't going to sign it until I get good and well. If they can't wait until I am up and around again, I wont sign it at all. I don't care if I never sign it." Nothing more was done, and on April 13, 1905, Mrs. Bernheim died. Thereafter, this suit was brought.

The amount of the policy was paid into court by the defendant Modern Brotherhood of America. The only question, therefore, to be considered is whether, under the facts stated, there was a change of beneficiaries.

"The authorities are outspoken and overwhelming to the effect that the beneficiary has no vested right in the certificate and that the assured may change it at will." *Cade v. Head Camp W. O. W.*, 27 Wash. 218, 67 Pac. 603.

There is no charge here of undue influence or fraud. It is at once apparent that the assured intended to change the beneficiary from her son to her husband, and did what she could to accomplish that purpose, until the policy was returned to her the third time, and then when she was sick, she said to her father: "I am not going to sign any more papers now." And again later to her sister-in-law, she said: "I ain't going to sign it till I get good and well. If they can't wait until I am up and around again, I wont sign it at all. I don't care if I never sign it." Her husband was not present at the time of either of these conversations, and so far as the record shows, had never requested her to make any change of beneficiaries after the agreement between them made prior to her marriage. He supposed the change had been made at the time the policy had been returned to the

supreme secretary, and was not informed otherwise until after his wife's death. She knew, of course, that the supreme secretary desired her to sign in a certain way the application for the transfer of the beneficiaries, and that the papers she had executed were not satisfactory to that officer; but she made no statement which would indicate that she had changed her mind in regard to the beneficiaries, unless it was the statement that, "I am not going to sign any more papers. I don't care if I never sign it." But we think these statements were not sufficient to indicate that she had changed her mind in regard thereto. They simply meant that she was unable then to do anything more than she had done, and did not desire to be bothered on account of the insurance. The evidence shows she was very sick at the time the statements were made, and that she died soon afterwards. The by-laws of the order provided as follows:

"Should a member in good standing desire at any time to change his beneficiary or beneficiaries, he shall pay to the secretary a fee of fifty cents and deliver to him his certificate with written surrender on the back thereof, and directions as to the change desired, and name of new beneficiary. The secretary shall then forward such certificate with the fee of fifty cents to the supreme secretary, who shall at once issue a new benefit certificate as requested."

Mrs. Bernheim had done all this and, therefore, all that was required of her by the by-laws of the order to obtain the change of beneficiaries. It was the duty of the supreme secretary, under the by-laws of the order and upon receipt of the certificate the first time, to issue the new certificate which was requested. Instead of doing so, the secretary required the application to be signed by the assured by both her name before and that after marriage. But he stated in his evidence that there was no rule or by-law requiring that to be done, but it was the custom of his office to do so. Where the assured may change beneficiaries at will, and where he has pursued the course pointed out by the by-laws, and where

he "has done substantially all that is required of him to effect
a change of beneficiaries, and all that remains to be done are
the ministerial acts of the officers of the association, the
change will take effect though the formal details were not
completed before the death of the insured."    4 Cooley, Briefs
on the Law of Ins., p. 3769, and authorities there cited.
3 Am. & Eng. Ency. Law (2d ed.), p. 999.

We think this rule is decisive of the case, and that, so far
as the claimants are concerned, the assured had completely
changed the beneficiary from her son to her husband.    She
was required to do no more under the by-laws than she had
already done.    The custom of the Brotherhood, requiring
the signature in a certain way, was for its own protection,
and cannot be held to defeat the will of the insured.

The judgment appealed from must therefore be affirmed.

ROOT, CROW, and DUNBAR, JJ., concur.

FULLERTON and HADLEY, JJ., took no part.