GEORGE H. ALLEN *vs.* THE HARTFORD LIFE INSURANCE COMPANY ET AL.

First Judicial District, Hartford, March Term, 1900. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

A person may insure his own life and make the policy payable to whomsoever he will, regardless of the payee's insurable interest; unless, possibly, when it is done in bad faith as a mere device for speculating upon the hazard of the life.

The gift of a policy of life insurance, if once executed by delivery to the payee, is irrevocable; and therefore the declarations and conduct of the donor evincing a subsequent intention to transfer the policy to another, are wholly insufficient to constitute a surrender or relinquishment upon the part of the original donee.

The delivery of an obligation, whether absolute or conditional, of a third party, for the payment of money, to the person named as payee, is at least *prima facie* evidence of an intent to invest the payee with the beneficial right of action upon it.

A party cannot escape the duty of producing a written instrument material to the issue and admittedly in his possession, by passing it over to his attorney pending the suit. The latter may be called as a witness and compelled to produce the document as evidence.

The donee of a policy of life insurance, who had been in partnership with the donor, left the policy in the firm's safe after, as he had done before, the dissolution. *Held* that he might be permitted to state how he came to leave it there, for the purpose of refuting any claim that in so doing he intended to surrender or relinquish his interest as payee.

As a fact which had influenced his conduct, a witness may state what he thought or believed at a certain time.

Testimony of the donee, that the policy in a suit was never held by him as security for a debt, as claimed by the donor's administratrix, is not open to the objection that it is the witness's construction of the alleged agreement.

A leading question may always be replaced by one unexceptionable in form, although the attention of the witness is thereby directed to the desired answer. The only remedy for this evil lies in the power of the trial court to regulate the conduct of counsel.

Declarations of a decedent relevant to the issue are admissible as against his personal representative.

Argued March 8th—decided April 4th, 1900.

ACTION by the payee of a matured policy of life insurance against the insurer and the administratrix of the estate of the insured, praying for an order of interpleader, for judgment as to whom the money should be paid, and that on payment the administratrix, who held the policy, might be ordered to surrender it to the insurer; brought to the Superior Court in Hartford County and tried to the court, *Roraback, J.;* facts found and judgment rendered for the plaintiff, and appeal by the administratrix for alleged errors in the rulings and findings of the court. *No error.*

The facts, which were specially found, are sufficiently stated in the opinion.

*John J. Jennings,* for the appellant (Mary M. Allen, administratrix).

*John R. Buck,* for the appellee (plaintiff).

BALDWIN, J. In 1884 Clarence W. Allen, then twenty-nine years old, took out the policy in question in this suit on his own life. It was for $5,000, and made payable on his death to "George H. Allen, if living; otherwise to said Clarence W. Allen's legal representatives." Shortly afterwards he delivered it as a gift to George H. Allen, who was his only brother and then twenty-one years of age, and to a considerable extent dependent on him for advice and aid in securing employment. Neither was indebted to the other, nor had they any business relations, nor was there any agree-

ment that each should insure his life for the benefit of the other, though afterwards George did for a time insure his life in favor of Clarence. The latter insurance George allowed to expire before 1893, in which year Clarence married. Clarence died in 1898, leaving a widow and child. He had continued to pay the premiums on the policy annually, except from 1885 to 1890, when they were paid out of the funds of a copartnership then existing between the brothers. During that period George kept the policy in the partnership safe, and there it remained after the partnership was dissolved in 1890, the business at the old stand being continued by Clarence, although George thereafter had a safe of his own in another place where he conducted his business. In 1895 Clarence declared his intention of procuring a transfer of the policy to his wife and child, and obtained from the insurance company a blank form to be signed by George for that purpose. He never, however, mentioned the matter to George nor took any further steps in that direction. At the time of his death he owed a small sum to George, which was subsequently paid by his administratrix. His estate was not a large one.

There is nothing in any of these facts which can vary the contract expressed in the policy. That is for the payment of the money, upon Clarence's death, to the plaintiff, if living. He was then living, and there is no sufficient equity in favor of the widow or child to debar him from insisting on his legal right. The gift of the policy was perfected by its delivery; and its subsequent deposit in the partnership safe, the payment of the premiums for a few years by the partnership, and its being left in the same safe, after the firm was dissolved, are wholly insufficient to constitute a surrender or relinquishment in favor of Clarence. Had Clarence asked George to execute the form of assignment which was procured from the insurance company, George would have been under no duty to comply with the request. A gift when once executed by delivery is irrevocable.

The administratrix contends that there was no sufficient proof of gift. The delivery of the obligation, whether abso-

lute or conditional, of a third party for the payment of money, to the person named as payee, is at least *prima facie* evidence of any intent to invest the payee with the beneficial right of action upon it. The trial court has found in this case that the policy was in fact delivered as a gift, and there is nothing in the subordinate facts that are set out which is inconsistent with this conclusion.

It is urged that George had an insurable interest in Clarence's life, at the date of the policy, as his next heir apparent, and that when Clarence married and a child was born who thereupon became his next heir apparent, the insurable interest of George became extinguished, and his equitable rights under the policy ceased, precisely as they would have, had he been originally a creditor and the debt had afterwards been paid.

But it is of no consequence whether George ever had an insurable interest in the life of Clarence. Clarence certainly had an insurable interest in his own life, and whatever insurance he might secure to protect it, he could make payable to whom he would. *Lemon* v. *Phœnix Mut. Life Ins. Co.*, 38 Conn., 294, 302. It is possible that such a transaction might be voidable by the insurer if it were a mere device to enable the payee to speculate upon the hazard of the life insured. *Connecticut Mut. Life Ins. Co.* v. *Schaefer*, 94 U. S. 457, 460; *Ætna Life Ins. Co.* v. *France*, ibid. 561. But in the negotiation and history of the policy now in question there was no such element of bad faith.

Error is assigned because the attorney for the administratrix, having been called as a witness by the plaintiff, was compelled to testify that the policy in suit was in his hands, and then to produce it for use in evidence.

The complaint charged, and the answer filed by his client admitted, that this document was in her possession. She could not escape the duty of producing it, if wanted for examination by the court, by passing it over, pending the action, to her attorney. There is no analogy between such an act and a confidential communication between attorney and client. It was no secret that the policy existed. The

rights of both parties depended upon its terms, and the plaintiff was entitled to have it speak for itself, in whosoever hands it might be found.

The plaintiff was properly allowed to state under what circumstances he came to leave the policy, after the dissolution of the partnership, in the safe as before. This was relevant for the purpose of anticipating any claim that to leave it there indicated an intention to relinquish or surrender his interest as payee. His reply to the question of his counsel was that he so left it because he thought it would be as safe there as anywhere. This stated an opinion, but stated it only as a fact, which had influenced his conduct. For this purpose it was admissible as fully as if it had been the opinion of a third party, and he had acted on that.

The administratrix offered evidence tending to prove that there was an oral agreement or understanding between the brothers that the policy should stand as security for a debt which at one time during its life was due from Clarence to George, but had been discharged. In rebuttal the plaintiff was asked whether the policy was ever held with reference to such a debt, to which he replied in the negative. The question and answer were properly admitted. The testimony is not open to the objection taken to it, that it was the witness's construction of an agreement. It was a denial that there was any such agreement as the defendant claimed.

A leading question was put to the plaintiff by his counsel, and when objected to as such, withdrawn, and another substituted which was unexceptionable in form. Error is assigned upon this, on the claim that the attention of the witness having been improperly directed to what was wanted from him, the point in view was gained, and the very harm done which the rule against leading questions is designed to avoid.

Justice would not less often fail if formal defects in the offer or introduction of testimony could not be corrected, than if slips in pleading were not the subject of amendment. An improper question can always be replaced by a proper one, and if impressions on witness or trier have been made

which may prejudice the adverse party, this result is an incident of that imperfection attaching to all that man does, from which even judicial procedure cannot be kept free. The only remedy is a preventive one, and lies in the power of trial courts to regulate the conduct of counsel at the bar.

The plaintiff in rebuttal was allowed to state that Clarence at one time said to him that he had drawn out of the partnership funds more than the witness had. This was relevant to the question of the business relations between the brothers, which were in issue under the pleadings, and Clarence's declarations as to those matters were clearly admissible as against his administratrix.

There is no error.

In this opinion the other judges concurred.