[No. 23401. Department Two. November 24, 1931.]

MARIE ELIZABETH KOCH, *Respondent,* v. AETNA LIFE INSURANCE COMPANY et al., *Defendants,* A. E. GRAFTON, *as Executor, Respondent,* LULA PILANT, *Appellant.*[1]

[1]Reported in 5 P. (2d) 313.

330

*Burkey & Burkey,* for appellant.

*Burkheimer & Burkheimer,* for respondent Marie Elizabeth Koch.

*B. D. Scott,* for respondent A. E. Grafton.

MILLARD, J.—The purpose of this action is to determine to whom shall be paid one thousand dollars due from the Aetna Life Insurance Company under a group insurance policy issued by the insurance company to the St. Paul & Tacoma Lumber Company on the life of Peter Miller, a lately deceased employee of the lumber company. The action was brought by Marie Elizabeth Koch, who claims to be the legally designated beneficiary, against the insurance company, the lumber company, the executor of the estate of the deceased Miller, and against Lula Pilant, who also claims she is the legally designated beneficiary under the policy. The lumber company and the insurance company disclaimed all interest in the question involved, and prayed permission to pay the money into court and to be relieved from responsibility as to the possession or distribution of the insurance fund. The prayer was granted. The defendant executor claims a portion of the proceeds to pay the funeral and burial expenses of Miller.

The court found, and entered judgment in accordance with the findings, that the plaintiff was entitled to $446, and that the executor was entitled to $554, of the one thousand dollars payable under the policy. From that judgment, Mrs. Pilant has appealed.

The Aetna Life Insurance Company issued to the St. Paul & Tacoma Lumber Company group insurance policy No. 2310, covering the lives of certain employees of the lumber company. The policy provides that:

"The company will issue to the employer for delivery to each employee whose life is insured under this policy an individual certificate setting forth a statement as to the insurance protection to which the employee is entitled and to whom it is payable."

On June 14, 1924, the lumber company delivered to Peter Miller, one of its employees, certificate No. 403, under the said group insurance plan in the sum of one thousand dollars. Page one of that certificate reads as follows:

"The Aetna Life Insurance Co. of Hartford, Connecticut, has insured the lives of certain employees of St. Paul & Tacoma Lumber Company by a Group Policy of Insurance, No. 2310, issued and delivered to the employer. Under and subject to the terms and conditions of said policy, and the application therefor, the life of PETER MILLER, an employee, is insured for the sum of ONE THOUSAND DOLLARS. This insurance will be terminated whenever said employee for any reason whatsoever ceases to be in the employ of said employer. ST. PAUL & TACOMA LUMBER COMPANY. Dated June 14, 1924
Certificate No. 403."

On page two of the certificate is the schedule of insurance. A letter from the lumber company "To OUR EMPLOYEES," reading as follows, appears on page three of the certificate:

"Feeling confident that Group Insurance secured through companies of unquestioned financial standing is the best expression of our appreciation of long service and loyalty of our employees, we have insured certain of the employees of our mills in the Aetna Life Insurance Company, of Hartford, Connecticut.

"The schedule of insurance is shown on the opposite page and the amount of insurance in force upon your life is payable in event of death to the beneficiary duly designated by you. The life insurance protects your beneficiary in case of your death while in the employ of this company and is secured without any expense whatsoever to you and without any medical examination. We believe that this will be appreciated by you and we are confident that it will be one of the best investments your company has made. The benefits are, therefore, mutual and do not in any way interfere with the laws of compensation of the State of Washington, or with any insurance that may be carried by the individual.

"You are at liberty to name the beneficiary to whom you wish your insurance paid in event of death, which beneficiary is subject to change at your request at any time.

"If you do not name a beneficiary or if your last duly designated beneficiary does not survive you, then we shall pay your insurance to the person or persons whom we deem most entitled to receive it.

"Should you become totally and permanently disabled before attaining the age of sixty years, the amount of insurance then in force upon your life will be paid to you, upon our request, in one sum or in installments, subject to the terms and conditions of the policy, in lieu of all other benefits provided for under the group policy.

"It is the writer's personal belief that your beneficiary will appreciate this insurance in case of your death."

At the time the certificate was issued, Miller designated his wife as his beneficiary by writing her name upon a beneficiary designation card delivered to

him by his employer with the insurance certificate. Nowhere in the insurance certificate does the name of the beneficiary appear; in fact, there is no space provided or place indicated in the certificate in which to write the name of the beneficiary. The beneficiary designation card was filed by the employer in its office.

Mrs. Miller died in 1928. On December 19, 1929, approximately sixteen months prior to Miller's death, which occurred April 27, 1930, Miller designated respondent Marie Elizabeth Koch, his sister, as his beneficiary. She was designated as beneficiary in consideration of nursing and caring—the agreement was oral—for her brother the remainder of his life. She later refused to carry out the agreement, and returned to her home in Montana.

The evidence as to whether Miller called at the office of the lumber company and there made out the card changing his beneficiary or whether the lumber company's representative called at Miller's home to have a beneficiary designated, is in sharp conflict. Appellant insists that an office employee of the lumber company visited Mr. Miller at his home; that to the latter was given by that office employee a beneficiary card, and the attention of the insured was directed to the fact that the beneficiary named, Mr. Miller's wife, died in 1928; that thereupon Mr. Miller signed the card designating his sister, respondent Koch, as his beneficiary.

Respondents claim that, in response to a letter written to Mr. Miller by the lumber company a few days prior thereto, Mr. Miller called at the lumber company's office December 19, 1929, and signed and delivered a new beneficiary card to the lumber company naming respondent Koch as his beneficiary. That card reads as follows:

"IMPORTANT

"St. Paul & Tacoma Lumber Company,

"Gentlemen:

"I, Peter Miller,—name of insured—Residing at 2116 So. Sheridan—Address of insured.
hereby name as beneficiary of my group insurance policy the following person or persons:

"Marie Elizabeth Koch          Sister

"Name of first beneficiary          Relationship to me

"R. 2, Billings, Montana

"Address of 1st beneficiary.

Return this card to your Foreman when completed. If any other settlement is desired, please designate on back of card."

On the back of the card is the following:

"This card signed and beneficiary designated by Peter Miller in presence of Harry W. Naubert, Dec. 19, 1929.          (Signed) Harry W. Naubert."

The court's findings of fact, so far as material, read as follows:

"That the plaintiff, who is the sister of said Peter Miller, came to Tacoma from her home in Montana to nurse her brother, Peter Miller, during his illness and failing health, together with her husband in December, 1929; That in consideration of the promises of the plaintiff to her brother to nurse and care for him during the remainder of his natural life, and to pay the funeral expenses of said Peter Miller, he then and there agreed with his sister to make her the beneficiary under said group insurance policy No. 403; that she was so designated as beneficiary in consideration of such future services and the expenditures to be made by her; that Mrs. Koch subsequently refused to carry out her agreement.

"That the defendant, Grafton, has become indebted for funeral and burial expenses of said Peter Miller in the sum of $554, which sum is due and payable to him out of the registry of the Court from said sum of $1,000, less costs incurred by said lumber company;

"That on, to wit, January 21, 1930, said Peter Miller delivered to the defendant, Lula Pilant, said

benefit certificate No. 403, in the presence of witnesses with the intention of making said Lula Pilant beneficiary of said certificate;

"That no notification of the intention of the said Peter Miller to make Lula Pilant the recipient of the proceeds thereof was ever given in writing or orally by Peter Miller or anyone else to the St. Paul & Tacoma Lumber Co.; that said Lula Pilant was a friend of several years standing of said Peter Miller; that said Lula Pilant retained possession of said certificate from said date until the trial of said action;

"That the plaintiff herein came to Tacoma from Billings, Montana, and cared for her said brother, Peter Miller, from about December 4th, 1929, until January 15, 1930, paying all grocery bills and caring for him during said time, he being ill and confined to his bed practically all of said time; that said brother and sister parted at that time on friendly terms; and said Peter Miller gave her over $200."

While respondent Koch denied that there was any agreement between her and her brother, the evidence preponderates in support of the finding that Mrs. Koch agreed to come to Tacoma and care for her brother until his death, in consideration of receiving all of his property and the proceeds of the insurance policy, subject to the payment of his funeral expenses and other debts.

Shortly prior to the signing of the card designating respondent Koch as his beneficiary, the decedent and his sister and her husband, went to the Tacoma mausoleum and selected a crypt for Mr. Miller. Of the purchase price of $350 for the crypt, Mrs. Koch paid $45. An application to take the crypt, subject to the rules of the mausoleum company, was signed by Mr. Miller and by Mr. Koch, but not signed by Mrs. Koch. With reference to the payment of the balance due on the crypt, there was written on the application, "To come from insurance or otherwise. St. Paul in-

surance." The application covered crypt 10, row D, section 12. The insurance policy was not, nor was any other property, pledged for the payment of the crypt. Upon the death of Mr. Miller, his executor applied for a different crypt, viz., crypt 12, row D, section 12, and stated in the application, "To be paid from Peter Miller Estate."

A general claim against the estate was filed by the mausoleum company and by the undertakers. Both claims were approved by the executor as general claims against the estate, and at the request of the executor were by order of the court directed to be paid. Mr. Miller's will provided:

"I direct that my executor, hereinafter named, as soon as there shall be sufficient funds in his hands, shall pay my funeral expenses and all my just debts."

Before respondent Koch and her husband returned to Montana, the latter was released by the mausoleum company, with Mr. Miller's consent, from the application for the crypt, and his name was scratched off of the application. The forty-five dollars paid on account by Mrs. Koch was repaid to her by Mr. Miller, who gave her fifty dollars and an additional sum of two hundred dollars to return to Montana.

The finding of the court that Mr. Miller gave the insurance certificate to the appellant for the purpose of making her his beneficiary is amply supported by competent testimony. The court was of the view that, though the certificate was given to the appellant, to whom manual delivery of it was made, with the intention of vesting her with the title to the one thousand dollars payable thereunder, the gift was ineffectual because the lumber company was not notified of the change of beneficiary and the lumber company had made no record of such change.

The finding that the funeral and burial expenses were payable out of the proceeds of the insurance policy is not supported by the evidence.

The insurance certificate was not assigned or pledged by Miller for that purpose. Less than a week subsequent· to the time that the purported contract with the mausoleum company was made, Mr. Miller designated his sister as beneficiary under the certificate. Respondent Koch could not have pledged the policy for the payment of burial expenses, as she had not at that time been designated as beneficiary. The money she advanced was repaid to her by Mr. Miller prior to her return to Montana, when she abandoned her agreement to nurse her brother in consideration of receiving his property and the insurance money. With the consent of Mr. Miller, the signature of Mrs. Koch's husband to the application for a crypt was cancelled by the mausoleum company.

Mr. Miller was interred in a different crypt, one selected by his executor after Mr. Miller's death. The mausoleum company filed a general claim therefor against the estate of the decedent. The executor approved that claim, which, upon the application of the executor, was by the court ordered paid out of the funds of the estate. By his will, Mr. Miller provided for the payment of such claims from the funds of his estate. The insurance money never became, nor do any of the parties now contend that the one thousand dollars insurance money became, a part of the Miller estate.

By the contract between the insurance company and the employer on the one side and Peter Miller on the other, Miller having designated respondent Koch as his beneficiary, the insurance company agreed to pay the amount of the policy to respondent Koch. By her designation as beneficiary, Mrs. Koch had a mere ex-

pectancy, revocable at the pleasure of Mr. Miller, the insured. *Cade v. Woodmen of the World*, 27 Wash. 218, 67 Pac. 603. Miller could, under the terms of the certificate, change his beneficiary at any time. The letter, which is a part of the insurance certificate, provides that:

"You are at liberty to name the beneficiary to whom you wish your insurance paid in event of death, which beneficiary is subject to change at your request at any time."

If no beneficiary had been designated, or if the designated beneficiary predeceased Miller, who did not name another beneficiary, then Miller's employer was authorized by the certificate, as follows, to pay, upon the death of Miller, the insurance fund to the person or persons selected by the employer:

"If you do not name a beneficiary or if your last duly designated beneficiary does not survive you, then we shall pay your insurance to the person or persons whom we deem most entitled to receive it."

Miller, the insured, had the right to change beneficiaries. Nowhere in his insurance contract is there any provision that, to effect a change of beneficiaries, he shall observe certain required forms and methods. By the express terms of the contract, Miller was given the right to change the beneficiary named by him.

Neither expressly nor impliedly does the contract provide that Miller can not change the beneficiary unless he complies with requirements pertaining thereto imposed by the insurer and his employer. The manner in which the employer kept its record of insurance certificates and the beneficiaries designated, was a business method of the employer. How the records were to be kept, was not provided by the insurance contract. It was not a condition precedent to the

changing of beneficiaries that the insured sign a card submitted to him by his employer. An oral designation would have been a valid designation. The consent of the employer was not essential to effectually designate a beneficiary. The only purpose of notice to the employer was for its protection; that is, notice was not necessary except that the employer might be prejudiced through lack of notice by payment to another person.

The right of Miller to change his beneficiary is expressly reserved to the insured in the insurance certificate. No mode was provided by the contract by which the change of beneficiary was to be effected. The insurance certificate or policy does not prescribe the time when a change shall become effective. The insurance contract does not specify the act essential to effectuate the change of beneficiaries. It logically follows that any act clearly indicating the intention of the insured to change his beneficiary will effectuate the change. Under the terms of the contract in the case at bar, the insured did all that was required of him in order to effect a change of beneficiary; the only thing lacking to complete the change was the performance of a ministerial act on the part of the employer—that is, the noting on a designation card the change and the filing of that card with the records of the employer.

A policy of insurance may, as any other chose in action, be made the subject of gift or of assignment. 37 C. J., p. 425, § 129.

While mutual benefit certificates, ordinary life policies, and group life insurance contracts differ in some respects, there is no difference in the rules of law applicable to the change of beneficiaries where the respective contracts expressly permit the insured to change at will his beneficiary, and where there is no by-law, statute or requirement in the policy respecting the mode of changing beneficiaries. It follows that,

under the facts in the case at bar, by the delivery of the insurance certificate to the appellant with the intention of giving to her the proceeds of that policy upon his death, Miller made a valid gift of the insurance policy to the appellant and thereby designated her as his beneficiary.

In *Heinzman v. Whiteman*, 81 Ind. App. 29, 139 N. E. 329, it was held that,

"It will be observed that the cross-complaint under consideration alleges, that said Supreme Tribe of Ben Hur, which issued the certificate of insurance in suit, was a fraternal benefit society. It is well settled that the beneficiaries named in such certificates may be changed by the members to whom they are issued, free from all limitations or restrictions, except those imposed by law, or such as are imposed by the articles of incorporation or the by-laws of the society, or by the terms of the certificates themselves. In other words, since the provision of any statute affecting such a certificate, as well as the articles of incorporation and by-laws of the association, become a part of the contract of insurance, the general rule may be said to be, that the holder of such a certificate has the right to change the beneficiary named therein, unless the contract provides to the contrary. [Citing cases] It is clear that where no mode for making a change in the beneficiary is prescribed, the same may be effected in any way the insured may choose, so long as he expresses a clear intent to make the change. 29 Cyc. 130; 14 R. C. L., 1390."

In *Suelflow v. Supreme Lodge, Knights & Ladies of Honor*, 165 Wis. 291, 162 N. W. 346, the court said:

"Now we have seen that the assured was competent to change the beneficiary without her consent. There was no written law to the contrary, and the unwritten law gave him such right, subject to the provisions of the insurance contract and the rules and regulations of the society which issued the certificate. There was no provision on the subject in the certificate, nor, so far as we can discover from the evidence, was the

matter dealt with by the constitution, by-laws or regulations of the society. The constitution provided for payment at maturity of the amount mentioned 'to such member or members of the family of said deceased, or to a person or persons dependent upon said deceased or related to him or her, as he or she may have directed.' No particular manner of giving directions was mentioned. Of course, the direction in the certificate would govern in the absence of any other.

"There being no proof that the manner of making a change of beneficiaries was prescribed by the constitution, by-laws, or regulations of the corporation, it must be presumed that the assured was left to change the beneficiary within the designated class as he saw fit. *Opitz v. Karel*, 118 Wis. 527, 95 N. W. 948 [62 L. R. A., 982, 99 Am. St. Rep. 1004]. It is elementary 'that where no formalities are required, a change of beneficiaries can be made in any way indicating the intention of the member.' 1 Bacon, Ben. Soc. (3d ed.) § 308a, and cases cited. The text, supported by the authorities, contains this in effect: Where neither the constitution nor by-laws prescribe any formalities for a change of beneficiary, any definite designation of a different beneficiary, will suffice. It may be made by a paper signed by the member, expressing his intention and mailed to the society. 'The disposal of the benefits may be made by the mere direction of the insured.' "

In *Hirschl v. Clark*, 81 Iowa 200, 47 N. W. 78, 9 L. R. A. 841, notice of change of beneficiary was not received by the insurer until after the death of the insured. The court said:

"By the very terms of the contract, the change of the beneficiary is a mere direction to the association, which it is bound to obey. The 'disposal of the benefits' may be made by the mere direction of the insured. This act does not require the assent of the association. It is not a new contract between the insurer and the insured. If the association receives notice of the change in the beneficiary before it has been in any way prejudiced, it would seem that it would be bound to obey the direction."

In *Brinsmaid v. Iowa State Traveling Men's As-*
*.sociation,* 152 Iowa 134, 132 N. W. 34, 42 L. R. A. (N.
S.) 1161, Ann. Cas. 1913B, 1282, the court said, with
reference to change of beneficiary by will and lack of
notice of such change to the insurer prior to the death
of the insured:

"Possibly, as suggested by appellants, such notice
might be conducive to the orderly transaction of busi-
ness. On the other hand, it would be a limitation on
the freedom of the member in disposing of the benefit
to be derived from his contract, and we know of no
reason for insisting on the association exacting such
notice when by failing to require it in its by-laws a
contrary wish has been evidenced. Neither notice to
the association nor consent by it thereto was essential
to the change of beneficiaries."

In changing his beneficiary, Miller was not bound by
the company's regulation—filling blanks on a designa-
tion card—as that was simply a record kept by the em-
ployer for its own convenience.

"The insured, however, in changing his beneficiary,
is not bound by a mere regulation or matter of practice,
put in effect for the convenience of the insurance com-
pany." 2 Cyc. of Insurance Law, 863.

No writing was necessary, the contract not provid-
ing otherwise, to effect assignment of the insurance
certificate. 6 Cyc. of Insurance Law, 5147.

"A distinction is made in some jurisdictions be-
tween an assignment and a change of beneficiary, in
that an assignment is the transfer by one of his rights
or interest in the property, rests upon contract, and
generally requires the delivery of the thing assigned,
while the right to change the beneficiary is the power
to appoint, which must be exercised in the manner
specified in the contract. There is also a distinction in
that a substituted beneficiary is not an assignee, at
least, not so as to come within a statute prohibiting
certain testimony by parties sustaining certain rela-
tions to each other. If a policy designates a bene-

ficiary, and also provides a certain mode for its assignment, and it is assigned not in the manner provided, but by parol and delivery to another, who retains possession, such assignee cannot recover as against the designated beneficiary, especially where the stipulation as to the manner of changing the beneficiary is not complied with. And while the authorities are not in accord, the greater number of cases support the theory that noncompliance with the procedure required by a policy in case of a change of beneficiary will prevent an assignee thereof from taking the proceeds as a new beneficiary, as against the beneficiary named. However, there is considerable authority which supports the proposition that an assignment may effect a change of beneficiary by, in effect, substituting the assignee as a new beneficiary.". 6 Cyc. of Insurance Law, 5191.

" . . . the better and quite generally accepted rule is that such an assignment need not be in writing to be valid; in other words, that life insurance policies may be validly assigned by parol, the theory being that such a contract is governed in this respect by the rules applicable to ordinary, simple, written contracts." 6 Cyc. of Insurance Law, 5195.

" . . . an equitable assignment occurs when the insured makes a parol assignment of a policy on his life, and accompanies it by delivery." 6 Cyc. of Insurance Law, 5218.

In *Opitz v. Karel,* 118 Wis. 527, 95 N. W. 948, 62 L. R. A. 982, 99 Am. St. 1004, the plaintiff, claiming to be the owner of the policy through a gift by the insured, instituted an action to recover the proceeds of the policy. The company paid the money into court. The policy provided:

"If this policy shall be assigned the assignment must be in writing and the company shall not be required to notice such assignment until the original or a duplicate thereof is filed in the home office."

During his life, the decedent delivered the policy to the plaintiff, making a parol gift to her, just as the

decedent in the case at bar presented the policy to the appellant. She accepted and retained the policy during his life, as did the appellant in the case at bar. The policy originally provided for payment to the insured's executors, administrators or assigns. The court held that the donee of the policy was entitled to the proceeds, saying:

"The suggestion that such an agreement cannot be relied upon, because it rests entirely in parol, is in conflict with the established rules controlling a transfer of property of this nature, where the delivery of the instrument which is the evidence of a subsisting obligation is a symbolical delivery of the property, and operates as a completed transfer of the title as between the parties to the transaction. No particular form of words or written instrument is required by the law to constitute an assignment of this class of property.

"'Any order, writing, or act which makes an appropriation of the fund amounts to an equitable assignment, and an oral or written declaration may be as effectual as the most formal instrument. . . . The same is true as to gifts of choses in action, if a delivery, or what in judgment of law amounts to such, takes place.' *Crook v. First Nat. Bank, supra; Wilson v. Carpenter,* 17 Wis. 516; *Skobis v. Ferge,* 102 Wis. 122, 78 N. W. 426.

"The delivery of the instrument is a symbolical delivery of the fund, and the contract or gift becomes executed and completed, vesting title in the person receiving it. . . .

"This condition contains no agreement declaring the policy void in case of a transfer not in writing, nor any terms imposing restrictions on the insured to deal with third parties concerning his property. The provision, at most, is for the benefit and protection of the company, which it may assert as against any claimant of the proceeds of the policy, other than the beneficiary named therein. It does not, however, prevent the insured from transferring it as a chose in action. We are unable to find anything in the contract or the con-

dition attached which takes from the insured the right and power to dispose of the policy by any of the methods approved in the law, to the exclusion of the beneficiaries named in the policy. Such a policy is not to be distinguished from ordinary choses in action, and comes within the operation of the legal rules applicable to agreements involving pecuniary obligations. To deprive the policy owner of the right given him by the law to dispose of it, we must find clear and binding provisions to that effect. . . .

"It has been held that the insured, having the power to transfer the policy under the law and the terms of the contract, may dispose of it by gift, and, when such transfer meets the requirements of the law constituting a gift, the title to the fund at its maturity is vested in the donee."

We agree with counsel for appellant that to agree with the ruling of the trial court would be to make substance out of what the employer considered a matter of form. To effect a change of the beneficiary, no action by the employer was required. So long as it learned of the desired change of beneficiary by the insured before the money was disbursed, it could not be prejudiced. The trial court, though satisfied that the decedent desired appellant to have the insurance money, and that the decedent gave the policy to the appellant, was of the view that the employer should have been notified of the gift in some manner prior to the death of the insured. All that the employer desired was notice before it disbursed the money. That notice it has received, and the money was placed in custody of the court.

The gift of the policy to the appellant, together with the actual manual delivery of same to her, and the language of the decedent clearly expressing his intention to make her the owner of the policy and entitle her to the proceeds, operated as a revocation of the mere inchoate right of respondent Koch, previously

possessed by her through her designation as beneficiary. There was an effectual change of beneficiary. The appellant became the owner of the policy, free from any claim of the previously designated beneficiary, respondent Koch. As such owner, the appellant is entitled to the proceeds of the insurance certificate.

The judgment is reversed, and the cause remanded with direction to award the fund to the appellant.

TOLMAN, C. J., MAIN, and HOLCOMB, JJ., concur.

BEALS, J. (dissenting in part)—The rule that such a policy of insurance as that with which we are here concerned may be transferred orally, is correctly laid down in the majority opinion, and the judgment appealed from must therefore be reversed. By the same token, however, it seems to me that the bill for the crypt in the mausoleum, in which was placed Mr. Miller's body, should be paid out of the proceeds of the policy, as in my opinion Mr. Miller's intention that this be done appears from the evidence as clearly as does his wish that appellant have the balance of the proceeds of the policy of insurance. Appellant is nowise in the position of a holder for value; she is a mere donee, and takes the policy subject to prior equities.

With this exception, I concur in the result reached by the majority.