MARY ELLEN SHAW *vs.* JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

634

Argued October 3d, 1935—decided January 8th, 1936.

*Edwin G. Hayes,* for the appellant (plaintiff).

*Donald E. Cobey,* with whom was *Harold C. V. Eagan,* for the appellee (defendant).

HAINES, J. The following facts are established by the finding with such requested changes as the plaintiff is entitled to have under the evidence: A group insurance policy was issued to the New York, New Haven and Hartford Railroad Company by the defendant for the benefit of certain of the employees of the railroad company. By the terms of the policy, individual certificates were to be issued to each employee stating the insurance protection to which he was entitled and the name of the beneficiary, with provisions for conversion in case of termination of employment, into other forms of insurance. It was also provided that a change of beneficiary could be made by the employee by filing written notice at the defendant's home office accompanied by the original certificate—the change to take effect only upon the indorsement of the original certificate by the defendant. It is apparent that modifications of some of these provisions were made by agreement between the defendant and the railroad company (hereinafter called the company), one of which provided that upon receipt of a completed change of beneficiary form and the original certificate, the company might issue the new certificate and notify the defendant of it. The defendant furnished the company a large number of printed forms

to be used in operating the plan and sent a representative to the company to install it and instruct the company in general as to the procedure to be followed. The assistant general manager of the company had general supervision of this work and he assigned a clerk, Duffy, to take charge under his direction, of all the records and the clerical work. All surrendered certificates and other original documents were retained by Duffy in the files of the company. When a properly executed change of beneficiary form, accompanied by the old certificate, was received by Duffy, he would execute a new certificate and notify the home office of the defendant and after written notice of its receipt and entry upon the defendant's home office records had been received, he would deliver the new certificate to the insured. If an original certificate had been lost, Duffy under instructions, required of the insured a written statement of that fact and before delivery of the new certificate he indorsed it "Superseding and in lieu of all certificates issued on this life prior to this date."

In 1929 Stephen Patrick Moore, an employee of the company, applied for and received a certificate of insurance under this group policy. This certificate recited that Moore was insured for $1000 payable to the plaintiff, who was his niece, and that the right was reserved to Moore to change the beneficiary. On the back of the certificate was a blank for registering any change of beneficiary, together with a note that such change would take effect only upon indorsement of the original certificate by the defendant at its home office. Moore was at the time a boarder in the home of his niece with whom he was on very friendly terms. She had cared for him and for his wife, who had died after a lingering illness, and had received no compensation. Moore gave the certificate to his niece saying

that it was in return for her kindness to him, and to his wife during her illness, and that "it couldn't half pay" for all she had done for him. He continued to live with her until 1932, when they quarreled and he moved away and their friendly relations ceased. She continued to hold the certificate in her possession, however, until his death on January 12th, 1934, without knowing that Moore had changed the beneficiary.

On July 12th, 1932, Moore addressed a letter to the head of the department in which he worked, saying: "This is to notify you that I have lost or mislaid my Group Insurance Policy No. H-1435. If consistent will you please have me furnished with a new policy." On the same day he signed a nomination of beneficiary form, used by the defendant, on which was printed "Nomination of Beneficiary." "To be sent to the Home Office with Certificate." This blank provided for a description of the first certificate by number and contained a statement as follows: "I, being insured under the certificate mentioned above, hereby nominate my estate to be the beneficiary under said certificate, still reserving to myself the privilege of other changes, subject to the provisions of the policy. This nomination shall cancel and supersede any nomination of a beneficiary heretofore made under this certificate." Underneath, in a form entitled "For Home Office use Only," appears "Certificate endorsed by G. L. B. Form 5G changed, G. L. B." These papers being forwarded to Duffy, he reasonably believed that the original certificate had been lost or mislaid, made out a new certificate payable to Moore's estate and indorsed it "Superseding and in lieu of all certificates issued on this life prior to this date." The nomination of beneficiary form was forwarded to the defendant's home office on July 20th, but that office was not informed that Moore claimed to have lost or

mislaid his original certificate. The initials above referred to were put on the certificate by someone whose identity was not determined by the evidence, but who was apparently an employee, in the defendant's home office. That office then notified Duffy that the change had been made and he delivered the new certificate to Moore, who retained it in his possession until his death, and thereafter the defendant paid $1000 to the executor of Moore's estate, notwithstanding a prior demand by the plaintiff that the money be paid to her. The plaintiff thereupon brought this action claiming to recover $1000 from the defendant upon the original certificate in which she was named as beneficiary.

The relations of the parties to an insurance policy are contractual and when the proceeds of the policy are made payable to a third person, it is properly characterized as a third party beneficiary contract. 1 Williston, Contracts, §§ 357, 369. The right reserved by the insured to change the beneficiary is in the nature of a power of appointment. *Goldman* v. *Moses,* 287 Mass. 393, 191 N. E. 873. Whether a particular provision in such a policy binds or confers rights upon only one or the other of the immediate parties, exclusive of any third party to be benefited under its terms, depends upon their intent, which is determined by construing the provisions of the policy in the light of circumstances shown to have existed when it was issued. *Mullen* v. *Reed,* 64 Conn. 240, 249, 28 Atl. 478; *New Britain R. E. & T. Co.* v. *Hartford Acceptance Corporation,* 112 Conn. 613, 615, 153 Atl. 658; *Baydrop* v. *Second National Bank,* 120 Conn. 322, 327, 180 Atl. 469. The provisions in a policy governing the method by which the insured may exercise his power of appointment by changing the beneficiary, are ordinarily for the sole benefit of the insurer. *Allen* v. *Home National Bank,* 120 Conn. 306, 313, 180 Atl. 498.

A provision that a change of beneficiary can only be made upon presentation of the policy for indorsement by the insurer is of this character and can therefore be waived by the insurer. *Supreme Council of Royal Arcanum* v. *Behrend,* 247 U. S. 394, 401, 38 Sup. Ct. 522; *Royal Union Mutual Life Ins. Co.* v. *Lloyd,* 254 Fed. 407, 410; *Quist* v. *Western & Southern Life Ins. Co.,* 219 Mich. 406, 408, 189 N. W. 49; *Hoskins* v. *Hoskins,* 231 Ky. 5, 15, 20 S. W. (2d) 1029; *Mutual Benefit Life Ins. Co.* v. *Swett,* 222 Fed. 200; 7 Cooley, Briefs on Insurance (2d Ed.) p. 6461.

Transactions between the insured and the beneficiary after the issuance of the policy cannot affect the obligation of the insurer unless they fall within some provision in the policy which was intended to be for the protection of the beneficiary at the time the policy was issued, or the insurer has thereafter in some way become a party to the transaction under some principle of law. The insured may, after the issuance of the policy, create certain rights in a beneficiary which can be maintained by the latter against the insured, his estate, or against a new beneficiary under the power reserved to make a change of beneficiary. *Allen* v. *Home National Bank,* supra. The insurer may become obligated to recognize such rights either by becoming a party to the transaction, by estoppel, or under usual equitable principles. See *Shepard & Co.* v. *New York Life Ins. Co.,* 87 Conn. 500, 504, 89 Atl. 186. So the insurer may incur an obligation in an interpleader action to which he is a party, by disclaiming interest in the proceeds of the policy and offering to pay to such person as proves his right thereto. *Neary* v. *Metropolitan Life Ins. Co.,* 92 Conn. 488, 102 Atl. 661; *Allen* v. *Hartford Life Ins. Co.,* 72 Conn. 693, 45 Atl. 955; *Knights of Columbus* v. *Curran,* 91 Conn. 115, 99 Atl. 485; *Atkinson* v. *Metropolitan Life Ins.*

*Co.,* 114 Ohio St. 109, 120, 150 N. E. 748; *Koch* v. *Aetna Life Ins. Co.,* 165 Wash. 329, 5 Pac. (2d) 313. In *Travelers Ins. Co.* v. *Gebo,* 106 Vt. 155, 170 Atl. 917, rights in the beneficiary were created by contract, and also in *Lahey* v. *Lahey,* 174 N. Y. 146, 66 N. E. 670; *Kansas City Life Ins. Co.* v. *Wilkinson,* 125 Kan. 305, 264 Pac. 37. In *Continental Life Ins. Co.* v. *Sailor,* 47 Fed. (2d) 911, and *Koch* v. *Aetna Life Ins. Co.,* 165 Wash. 329, 5 Pac. (2d) 313, rights were created in the beneficiary by gift, and in these cases beneficiary rights were recognized against the insurer where it had become a party to an interpleader action. In a number of such cases it appears that the beneficiary refused to surrender the certificate so that a change of beneficiary and an indorsement could be made, and the insurer did not attempt to take advantage of the failure to present the certificate, and it was held that the change of beneficiary had been accomplished. *McDonald* v. *McDonald,* 212 Ala. 137, 102 So. 38, 36 A. L. R. 761; *Union Mutual Life Ins. Co.* v. *Broderick,* 196 Cal. 497, 238 Pac. 1034; *Lahey* v. *Lahey,* supra; *John Hancock Mutual Life Ins. Co.* v. *Bedford,* 36 R. I. 116, 89 Atl. 154; *John Hancock Mutual Life Ins. Co.* v. *Jedynak,* 250 Mich. 88, 229 N. W. 413; *Hoskins* v. *Hoskins,* supra. In at least three of the cases already cited, the facts involved furnish a reasonably close parallel to those of the present case.

In *Royal Union Mutual Life Ins. Co.* v. *Lloyd,* supra, it appeared that the defendant, plaintiff in the lower court, and her husband agreed that as she had a separate estate they were to share the living expenses of the family and he would make a will in her favor and take out a policy of life insurance naming her as beneficiary, the premiums upon which she should pay. He did so and delivered the policy to her. She thereafter kept possession of it until her husband's death, and

while he paid the premiums she reimbursed him for them. The policy contained a provision that he might change the beneficiary by filing a written request therefor at the home office together with the policy, such change to take effect on the indorsement thereof by the company. Some years after the issuance of the policy they separated and the defendant obtained a divorce. He made affidavits to the company that he had lost the policy and requested a change of beneficiary. Thereupon the company issued a duplicate policy and indorsed the change of beneficiary upon it. The plaintiff after her husband's death, brought an action upon the original policy, and upon issue being made on the claim of the insurer that the policy should be canceled and surrendered, the court directed judgment in favor of the insurer.

In *Supreme Council of Royal Arcanum* v. *Behrend*, supra, it appeared that the plaintiff issued to the husband of the defendant a benefit certificate payable to his wife, which he gave to her as a wedding present. She thereafter retained the certificate in her possession and paid most of the premiums and assessments until her husband, having ceased to live with her, requested a change of beneficiary from her to his son and his daughter. The general laws of the Order provided that a member might at any time make a written surrender of his certificate and direct that a new certificate be issued to him, payable to such beneficiary or beneficiaries as he might designate, and that issuance of the new certificate should cancel all previous certificates, and further provided that if the benefit certificate was lost or beyond the member's control, he might upon making satisfactory proof of the fact by affidavit or otherwise, and paying a small fee, surrender in writing all claim thereto and receive a new benefit certificate payable to the same or a new beneficiary or bene-

ficiaries. He made affidavit that the certificate was beyond his control and relinquished all interest in it. Thereupon a new certificate was issued by the Order payable to the children as requested, and the wife was notified that the certificate held by her had been canceled. Upon his death the plaintiff paid the amount due under the certificate to the son and daughter. Thereafter the widow brought an action against the plaintiff to recover upon the original certificate and the court held that she had no right to recover. In this and the preceding case it is stated that any right the original beneficiary might have by reason of the transaction between her and the insured, could not be given effect in an action against the insurer.

In *Quist* v. *Western & Southern Life Ins. Co.*, supra, the husband took out a policy of life insurance payable to the plaintiff as beneficiary, reserving the right to change the beneficiary. The policy was placed in the hands of the plaintiff by her husband, and she paid the premiums as they fell due. Just before his death, the husband, through an arrangement with the insurer, constituted his estate the beneficiary in place of the plaintiff, received from the defendant a return of the premiums paid and agreed to a surrender and cancelation of the policy. The policy, being in the hands of the plaintiff, was not surrendered, but the insured stated to the company in writing the reason why he could not deliver it for indorsement of change of beneficiary. The plaintiff brought an action against the insurer claiming that the acts of the insured and the defendant company did not revoke her rights as beneficiary. A judgment for the plaintiff in the lower court was found to be erroneous, the appellate court saying (pp. 408, 409): "Change of beneficiary, under power reserved, rested with the insured, subject only to recognition by defendant company, and the provided

method of change constituted no promise, on defendant's part, to the beneficiary, to adhere to the letter of that method in case the insured and the insurer were content to and in fact accomplished such change without the production of the policy and indorsement thereon. The obvious purpose of the production of a policy and indorsement thereon of change of beneficiary is to evidence the consent of the insurer to a result accomplished at the request of the insured and to obviate the possibility of conflicting claims. The designation of plaintiff as beneficiary was revoked by the insured and his estate appointed beneficiary. The insured, as one party to the contract, and the insurer as the other, could waive indorsement on the policy of change of beneficiary. . . . Plaintiff cannot urge that the company is liable because it did not insist upon strict compliance with its power to have the policy produced at the time of the change of beneficiary."

Upon reason and authority we hold that when Moore sought to change the beneficiary, this plaintiff had no rights against the defendant by which she could require a strict compliance with the provisions of the policy as modified by the agreement between the company and the defendant concerning the manner in which the change should be effectuated. Nor had she a right to require the defendant to adopt any particular precaution against a false statement by the insured that he had lost or mislaid the original certificate. *White* v. *White*, 111 Miss. 219, 71 So. 322; *Spengler* v. *Spengler*, 65 N. J. Eq. 176, 55 Atl. 285; *Metropolitan Life Ins. Co.* v. *Bramlett*, 224 Ala. 473, 140 So. 752; *Waring* v. *Wilcox*, 8 Cal. App. 317, 321, 96 Pac. 910.

There were no provisions in the policy concerning lost or mislaid certificates and it was for the defendant to decide what course it would adopt to satisfy itself that such was the fact, before issuing a new certificate.

Of its decision the plaintiff had no legal right to complain. If, being satisfied that the certificate was lost or mislaid, the defendant had issued a new one in the exact terms of the old, Moore could have surrendered such new certificate for indorsement in an application for another one and thus have complied literally with the requirements as to surrender and indorsement. Such a circuitous method of accomplishing a change would have been a useless formality which the law does not require. So if Moore had dealt only with the defendant without the intervention of the railroad company, and a new certificate had been issued by the home office, there can be no question but that the new certificate would have been held as properly issued.

The participation of the railroad company under the circumstances, does not change that situation, since the trial court has found that the company had authority to make the change. There is nothing in the evidence to show express authority from the defendant to the company, but it is found that there was a general or implied authority given by the defendant to the company to issue new certificates in connection with the change of beneficiary, to retain all the papers in its own files and to operate the group insurance arrangement as between the defendant and the company's employees who were insured. The question as to whether the company had general or implied authority was one of fact, and the finding of the trial court that the company did have such authority was reasonably reached upon the evidence. *Adams* v. *Herald Publishing Co.*, 82 Conn. 448, 451, 74 Atl. 755; *Russo* v. *McAviney*, 96 Conn. 21, 27, 112 Atl. 657; *De .Nezzo* v. *General Baking Co.*, 106 Conn. 396, 399, 138 Atl. 127.

It is found that the plaintiff made written claim upon the defendant for the proceeds of the policy, before the defendant paid the money to the executor. If

she had any such rights against the defendant it was because of the fact that Moore had made a gift of the policy to her, and in order to bind the company to this transaction it would be necessary to show that the defendant had some notice, express or implied, of that transaction or of facts which upon some principle of law made it a party thereto, and no such facts are found. When the defendant, therefore, paid the money to the executor it was acting within its rights, since the change of beneficiary had already been lawfully accomplished, leaving the plaintiff no right of action against the defendant.

There is no error.

In this opinion the other judges concurred.