644

The **PRUDENTIAL INSURANCE COM-PANY OF AMERICA**, Plaintiff,

v.

The **GRAY MANUFACTURING COMPA-NY** and **Jennie Johnson Ditmars**, Defendants.

Civ. A. No. 9730.

United States District Court
D. Connecticut.

July 24, 1963.

Edward Hennessey, III, Robinson, Robinson & Cole, Hartford, Conn., for plaintiff.

Maxwell M. Merritt, Shepherd, Murtha & Merritt, Hartford, Conn., for defendant Gray Mfg. Co.

Delancey S. Pelgrift, Robert Y. Pelgrift, Pelgrift, Dodd & Stoughton, Hartford, Conn., for defendant Jennie Johnson Ditmars.

CLARIE, District Judge.

This action is founded on the Federal Interpleader Act, 28 U.S.C.A. § 1335. It was brought to determine the lawful ownership of the proceeds of a life insurance policy issued by the plaintiff. The latter has paid $104,036.29 into the registry of the Court, which sum includes $100,000.00, the face amount of the policy, plus $4,036.29, which represents the mortuary dividend and termination dividend [1] on said policy. The defendants are two adverse claimants of diverse citizenship. The amount in controversy is sufficient to confer jurisdiction upon this Court.

The present motions by each of the parties are for summary judgment pur-

1. "If this Policy, while it is in force other than as extended insurance or reduced paid-up insurance, matures by the death of the Insured and if any divisible surplus of the Company as ascertained by the Board of Directors has accrued here-on, any pro rata dividend apportioned therefrom by the Board of Directors for that part of the current policy year for which premiums have been paid will be added to the proceeds otherwise payable."

suant to Rule 56 of the Federal Rules of Civil Procedure. Each party claims judgment as a matter of law based upon the pleadings, admissions, exhibits, stipulations, and affidavit on file with the Court.

The defendant, The Gray Manufacturing Company, hereinafter referred to as "Gray", executed an employment contract on February 26, 1957 with Walter E. Ditmars, hereinafter referred to as "Ditmars", the late husband of the defendant, Jennie Johnson Ditmars. At that time, Mr. Ditmars was already employed as the general manager of the defendant corporation. The new contract was intended to modify and amend the existing employment agreement, changing his status with the company and continuing his employment under a different relationship.

The new agreement extended his employment through December 31, 1962 and provided that Mr. Ditmars should serve as a consultant and advisor for the company and its Board of Directors. He was to receive an annual salary of $25,-000.00 and a continuation of a prior stock option to purchase up to 25,000 shares of company stock at $15.00 per share, subject to conditions and restrictions; and Gray was to continue in existence certain insurance policies, the proceeds of one of which are the subject of this litigation.

"FOURTH: The Company further agrees that as additional compensation to Ditmars under this agreement, it will continue during the term of this agreement the existing policies of insurance on the life of Ditmars in the face amount of $200,-000., or such other amount as will enable it to perform its obligation as in this article provided, pay all of the premiums thereon and designate the beneficiary of such insurance as follows:

"For the calendar years 1957 and 1958, Jennie Johnson Ditmars shall be the beneficiary of the entire $200,000. proceeds of the said insurance;

"For the calendar year 1959, Jennie Johnson Ditmars shall be beneficiary of the proceeds of such insurance to the extent of only $150,000;

"For the calendar years 1960, 1961 and 1962, Jennie Johnson Ditmars shall be beneficiary of such insurance to the extent of only $100,000;
"Except for the above provisions, all right, title and interest in the above policies shall remain in the Company."

One of the insurance policies referred to above and effective when Ditmars died, was plaintiff's "Exhibit A", The Prudential Insurance Company's policy No. 12–793–820 for the face amount of $100,000.00. This policy on the life of Ditmars had been issued January 29, 1944; Gray was the policy applicant. The premiums were to be paid by Gray and the latter, its successors or assigns, was to be the sole beneficiary, pursuant to the terms of an attached rider.

The policy contained a specific provision regarding self-destruction; it reads:

"If the Insured, whether sane or insane, dies by his or her own hand or act within two years from the date of issue of this Policy, the Company shall be liable only for the amount of premiums actually paid on this Policy."

On the date of the issuance of the policy, a "rider form" was attached to it, entitled "Provisions As To Ownership And Control of the Policy"; it reads:
"Subject to such limitations, if any, as may be hereinafter set forth, all legal incidents of ownership and control of the Policy, including any and all benefits, values, rights and options conferred upon the Insured by the Policy or allowed by the Company and any ultimate interest as beneficiary conferred upon the Insured or the Insured's estate by the Policy, shall belong to the following Owner: The Gray Manufacturing

Co., of Hartford, Conn., its successors or assigns."

However, after the execution of the new employment contract of February 26, 1957, an additional rider and beneficiary provision dated March 8, 1957 was attached to and made a part of said policy. Its specific terms are as follows:

"If this Policy matures by death, the proceeds then payable in accordance with the terms of the Policy shall be payable in one sum as follows:

"(a) If the Insured (Ditmars) dies before January 1, 1963, the proceeds shall be payable in one sum to Jennie Johnson Ditmars, Beneficiary, wife of the Insured, if living, otherwise to The Gray Manufacturing Company, a corporation, of Hartford, Conn., its successors or assigns, Beneficiary; and

"(b) If the Insured dies on or after January 1, 1963, the proceeds shall be payable in one sum to The Gray Manufacturing Company, a corporation, of Hartford, Conn., its successors or assigns, Beneficiary."

Under this rider, Jennie Johnson Ditmars was a third party beneficiary for a stated term and during said term Gray was the alternate beneficiary. Gray was also a contingent beneficiary, because the company became sole beneficiary if Ditmars lived beyond December 31, 1962.

Commencing with the date of the new employment contract, the premiums on the existing policies were paid by Gray and Ditmars received the benefits as additional compensation. The latter reported the same as additional earned income on his Federal Income Tax returns for the calendar years 1957 through 1962. Gray, on the other hand, had been denied tax deductions for said payments because of its contingent interest in the policies.

Aside from the contract-policy in issue, two group life policies were maintained on the life of Ditmars by Gray; namely, The Travelers Insurance Company group policy No. G–96040, in the amount of $15,000.00, and Metropolitan Insurance Company group policy No. 8432–G, in the amount of $5,000.00. Both named Jennie J. Ditmars as beneficiary and have been paid in full as more fully appears in Gray's affidavit filed in this case.

On December 31, 1962, at about 4:00 o'clock P.M., Ditmars entered the Putnam Memorial Hospital in Bennington, Vermont, as a visitor. Shortly thereafter he inflicted a bullet wound upon himself and for this purpose sought and utilized an unoccupied room at said hospital. He died that day from this self-inflicted wound. Had he lived until after midnight of that day, his wife would not have been entitled to claim any of the proceeds of this life insurance. It would have been the property of Gray under the terms of the employment contract and the policy rider.

At the time the employment contract was executed at Hartford, Connecticut, Ditmars resided in Connecticut. Gray was a Connecticut corporation. The obligations created by their agreement are thus to be interpreted in accordance with the laws and public policy of this State.

"The obligation of a contract undoubtedly depends upon the law under which it was made." Northwestern Mut. Life Ins. Co. v. McCue, 223 U.S. 234, 246–247, 32 S.Ct. 220, 221–222, 56 L.Ed. 419 (1912).

A vital provision of the new agreement provided, " * * * it (Gray) will continue during the term of this agreement the existing policies of insurance on the life of Ditmars * * * and designate the beneficiary of such insurance as follows: * * * Jennie J. Ditmars * * *." This did not allow Gray discretion to substitute other policies of insurance on the life of Ditmars. It limited it to the "key man" policy so-called, that had been in existence on his life since 1944. Had the agreement permitted Gray discretion to substitute, it might then be argued that the insurance policy was selected solely as a vehicle of payment and other alternative means or

methods might just as well have been used. However, such was not the case. The continuance of the existing policies on Ditmars' life for a stated term, with Jennie Ditmars as beneficiary, was made a material and essential element of this contract.

This policy contained the usual clause limiting the insurer's liability in the event of self-destruction within two years of the policy's issuance. Under this clause, the insured's sanity or insanity was not material. This particular policy had been in effect thirteen years before the employment agreement was signed and approximately nineteen years prior to Ditmars' death.

■ Neither of the contracting parties could verily claim to be unaware of this provision. The provisions of the policy must be regarded as an integral part of the Gray-Ditmars contract. Beaverdale Memorial Park, Inc. v. Danaher, 127 Conn. 175, 179, 15 A.2d 17 (1940), Sherman's Sons Co. v. Industrial & Mfg. Co., 82 Conn. 479, 481, 74 A. 773 (1909). The policy was not merely a vehicle of payment. The possibility of self-destruction should have been within the contemplation of both Ditmars and Gray when the contract was signed. Neither saw fit to include any additional provision protecting against such a contingency.

"Where, however, a policy of that character is made payable to a third party [beneficiary], and contains no stipulation in reference to the insured intentionally destroying his own life, it is held that in the event of self-destruction of the insured while sane the beneficiary may recover, for the reason that his or her interest became a vested one upon the issuance of the policy and no act of the insured can take away that right, except it be an act which the contract expressly provides shall have that effect." Grand Legion of Illinois Select Knights of America v. Beaty, 224 Ill. 346, 349, 79 N.E. 565, 566, 8 L.R.A.,N.S., 1124 (1906); Patterson v. Natural Prem. Mutual

Life Ins. Co., 100 Wis. 118, 75 N.W. 980, 42 L.R.A. 253 (1898); Farmers' Loan & Trust Co. v. McCarty, 100 Conn. 367, 372, 124 A. 40 (1924).

■ Both Jennie Ditmars and Gray had a financial interest in the proceeds of the insurance policy; as such they were co-assured. The named beneficiary, Jennie J. Ditmars, took a vested interest in this policy pursuant to the terms of the employment contract and the insurance policy rider dated March 8, 1957. This vested interest was qualified; it was subject to divestment if her husband lived beyond December 31, 1962. Gray was an alternate beneficiary if Jennie Ditmars predeceased her husband during said term and a contingent beneficiary, whose interest was conditioned upon Ditmars' surviving the terminal date of the contract.

"The beneficiary's interest is regarded, in this State and quite generally, as more than a mere expectancy. * * * [W]here, as here, the right to change is reserved to the assured, the interest of the beneficiary is yet deemed to be vested, although qualified in that it is subject to be defeated by an exercise of the right reserved. * * * 'So long as the power of defeasance is not exercised, [beneficiaries] stand in the position of one having a title which the law will recognize, and for the protection of which they are entitled to the usual legal and equitable remedies.'" Allen v. Home National Bank, 120 Conn. 306, 310–311, 180 A. 498, 500 (1935).

"The insured may, after the issuance of the policy, create certain rights in a beneficiary which can be maintained by the latter against the insured, his estate, or against a new beneficiary under the power reserved to make a change of beneficiary." Shaw v. John Hancock Mutual Life Ins. Co., 120 Conn. 633, 639, 182 A. 472, 474 (1936).

Inasmuch as Gray had not legally changed the beneficiary before Ditmars'

death and the third party beneficiary was a faultless party to the termination of his life, she is entitled to the proceeds of the policy.

"* * * the interest of his wife, as the named beneficiary in all of the policies, was vested, since the right to change, if it existed at all, had not been exercised." Connelly v. Wells, 142 Conn. 529, 535, 115 A.2d 444, 447 (1955). See also Allen v. Home National Bank, 120 Conn. 306, 310, 180 A. 498 (1935). Neary v. Metropolitan Life Ins. Co., 92 Conn. 488, 492, 103 A. 661, L.R.A.1918F, 306 (1918). C. E. Shepard & Co. v. New York Life Ins. Co., 87 Conn. 500, 504, 89 A. 186 (1913).

The self-destruction of the insured will not divest the third-party beneficiary, Jennie Ditmars, of her interest in the policy.

"It may well be in such a case that the intentional suicide of the insured while sane would prevent a recovery by his personal representatives, and yet not prevent a recovery in case of a policy in favor of beneficiaries who had a subsisting vested interest in the policy at the time of the suicide, and who could not, if they would, prevent the act of the insured." Northwestern Mut. Life Ins. Co. v. McCue, 223 U.S. 234, 252, 32 S.Ct. 220, 224, 56 L.Ed. 419 (1912).

Gray bases its claim on principles of public policy and equity. It claims Ditmars' wrongful self-destruction breached the employment contract and if Gray had learned of it in time to rescind, it would have done so and notified the insurer of its change of beneficiary. Since equity regards that as done, which ought to have been done, the Court should give judicial recognition to the rescission and the change of beneficiary as a matter of law. Gray also claims that it had an equitable interest in the policy as a contingent beneficiary, and as one who had paid a substantial portion of the premiums during the policy's existence it was entitled to an equitable lien upon the proceeds; and finally because the contract provided, subject to Jennie Ditmars' interest, that all right, title and interest in the policy remained in Gray.

The Court has carefully reviewed and considered each of the defendant Gray's claims of law, public policy, and equity as applied to the issues in this case. The Connecticut courts have not previously ruled upon the identical factual circumstance. They have clearly established, however, that a third party beneficiary, who holds a vested interest in a life insurance policy unrevoked at the time of the insured's death, is entitled to the policy proceeds.

Such a position tends to stabilize and simplify the contractual relationship between the parties in an otherwise complex field. It helps to eliminate legal uncertainty in cases of self-destruction, sane or insane, where the parties have neglected to clarify their contractual obligations. As a matter of public policy this is as it should be. In a business world often filled with tensions, anxiety, depression and hysteria, who is there among us who fully understands and knows with certainty the motivations of his fellow man in a given circumstance. Certainly, it is not uncommon to observe experts differ sharply in opinion evidence in this area. Therefore the overall public policy will be better served by the application of fixed legal principles consistent with the pattern layed down in our state courts.

■ Jennie J. Ditmars is entitled to the entire proceeds of the policy. The policy rider dated March 8, 1957 which provides "the proceeds then payable in accordance with the terms of the policy shall be payable in one sum" must be read in conjunction with the fourth paragraph of the employment contract. "These two contracts being connected by reference and subject-matter, both are to be considered in determining the real intent of the parties." Massaro v. Savoy Estates Realty Co., 110 Conn. 452, 459, 148 A. 342, 344 (1930). So read, it is evident that the mortuary dividend is to

be paid to the policy beneficiary entitled to the face value of the policy. The words of the employment contract are not to be read alone so as to limit Jennie Ditmars' recovery to the face value of the policy.

Jennie J. Ditmars is entitled to the entire proceeds of the policy, $104,036.29, less the $500.00 which all parties stipulated should be allowed as counsel fees to the plaintiff in this interpleader action.

The Clerk of the Court is hereby ordered to disburse the funds deposited in the registry by the plaintiff, The Prudential Insurance Company of America, in accordance with this finding.