[No. 1006.  Decided December 21, 1893.]

ALICE S. HILL, *Executrix, Appellant*, v. ELIZABETH HILL *et al., Respondents.*

WILLS—CHILDREN NOT NAMED OR PROVIDED FOR—EFFECT ON COMMUNITY PROPERTY—CONSTRUCTION OF STATUTE.

Sec. 1465, Gen. Stat., providing that, if any person die leaving a will in which his surviving children or their descendants are not named or provided for, he shall be deemed to have died intestate so far as such children are concerned, applies to the testator's community, as well as to his separate, property.

Under the settled construction of §1465, Gen. Stat., providing that "every such testator, so far as he shall regard such child or children, or their descendants, not provided for, shall be deemed to die intestate," proof of the testator's intention to make such provision, outside of the language of the will itself, is inadmissible.

*Appeal from Superior Court, King County.*

*Junius Rochester*, and *Fishback, Elder & Hardin*, for appellant.

*Charles F. Munday*, for respondents.

The opinion of the court was delivered by

STILES, J.—The appellant asks a construction of the will of her husband, William C. Hill, deceased, as between her-

self and the respondents, children of her and the said William C.

The deceased left a will in which all of his property was devised to the appellant, no mention being made therein of any of his children. Certain of this property is community real property in this state. The will was executed December 17, 1888, and when found and offered for probate in 1890 there was also found, in a sealed envelope with it, a letter signed by the deceased, and dated December 26, 1888, which letter was addressed to appellant, and made certain recommendations to her with regard to the management of the property devised to her, and of the children, three out of nine of whom were named. The court below held, following the cases of *Bower v. Bower*, 5 Wash. 225 (31 Pac. Rep. 598), and *Barnes v. Barker*, 5 Wash. 390 (31 Pac. Rep. 976), that the deceased died intestate as to his children, and this appeal is from the construction thus given to the will.

· Appellant submits two propositions —

1. Does the statute (Gen. Stat., § 1465), which was construed in the above cited cases, apply to community property? which we unhesitatingly answer in the affirmative. The only way in which a deceased person can dispose of property in this state is by will. The term "testamentary disposition" is used in both the law of the property rights of married persons (Code of 1881, § 2411), and the law of descent of real property (*Id.*, § 3303; Gen. Stat., § 1481), but the meaning is "disposition by will." The very same statute, which used the words "testamentary disposition," also used the word "will" in a negative way to convey the same meaning. Code, 1881, § 2409. But, without this, the common usage the world over is to employ the words "will," "testament," and "last will and testament," as exactly synonymous.

Again, the fact that during the life of the husband and wife

the property acquired by purchase is held by either in common, or is community property, does not destroy its quality as property, which, subject to debts, may be disposed of by will to the extent of one-half by either spouse.   The statute, for the purpose of such disposition, speaks of it as *"his* or *her* half of the community property," and of the descent of *"it"* to the children or the survivor.   Gen. Stat., § 1481.   Wherever the ownership of such property may be during the life of the husband and wife, the power to dispose of one-half of it by will is at all times as full and complete, though inchoate, as though each undivided half were the property of an unmarried person.   So, too, the statute of wills, although passed in 1854, long before the community property system was thought of in this state, applies equally to such property.   Gen. Stat., § 1458, empowers any adult of sound mind to devise all of his or her estate, real and personal, and this includes any and every kind of property, whether theretofore conceived of or not; and the provisions of § 1465 limit and qualify the power of devise as to community property as well as to any other over which the testator has anything more than a mere testamentary power.

2.  It is submitted that there is a difference between our statute, Gen. Stat., § 1465, and that of any other state on this subject, which ought to cause a change in our former rulings excluding parol proof to show that a testator had provided for his children otherwise than by his will.   The point made is a new one, and is based upon the language of the statute, which, at the vital portion, reads thus: "Every such testator, so far as *he* shall regard such child or children, or their descendants, not provided for, shall be deemed to die intestate," etc.   The Oregon and Missouri statutes, which are otherwise like ours, omit the word "he."   Appellant's contention is that the sense of our statute is: "Every such testator shall be deemed to die

intestate so far as *he* shall regard (consider) that such child is not provided for;" that is, it must appear, either from the will itself or by parol proof, affirmatively, that the testator's mind, at some time subsequent to the making of his will, was that one or more of his children or their descendants were not provided for, and necessarily that he continued of that opinion until the time of his death. Such a construction would make an obvious absurdity of the whole statute, for it would leave every will to be attacked by children or grandchildren, whether named as devisees or not, with a showing that the testator had in some way made it known that he did not consider that he had provided for the assailant. What he would be shown to have "considered" one day would be contradicted by something he said the next, and reinstated as his *"mind"* on a subsequent day. The mental wanderings of a sick person would be watched and noted and laid by for use in case the reading of the will should fail to disclose more than a nominal provision. In short, the sins of avarice and false swearing would receive an impetus not hitherto dreamed of in connection with decedents' estates.

The letter of the statute is appealed to and the rules of construction are invoked, and it is conceded that they must be given due force. But this word "he" has been in our statute for almost forty years, and it has never received the construction here contended for. Whether it was ever before called to the attention of a court we are unable to say. It seems not to have been heretofore expressly passed upon by this court; but the statute has undoubtedly been under consideration by courts of the state and territory hundreds, if not thousands, of times, and vast property interests are held under it. In full view of the construction universally given to it, the legislature has frequently reenacted it, *in hæc verba*, and we shall not now disturb that construction, especially to give it the absurd and alarming

effect which would surely follow if the varying state of mind of a testator were to be let in to affect his solemn will. In defense of the construction which has prevailed, it may be justly said that this was not the first law of its kind, by any means. When Washington was a part of Oregon, in 1849, the territorial legislature enacted this precise section, with the word "he" omitted. (Abbott's Real Prop. Stats., p. 61.)

Many other states had similar laws, the general purpose of which was to protect children from unjust omissions in the disposition of their parents' estates. In some of these laws the right of the child to interfere was defeated by a showing that the omission was intentional, and the intention might be made to appear by evidence *dehors* the will. But the object of all such statutes was the same, and we believe that our own provision had the same inspiration. It is incredible that our legislature could have intended to introduce into the law of wills such a self-destroying and confusing element under the guise of a benevolent statute which had long been in operation in other states.

There are nine children interested in this estate, eight of whom are minors. They reside in the District of Columbia, know nothing of our law, and were all served by publication. If this estate were now distributed to the sole devisee, would they be estopped, upon their respectively coming of age, to show that their father at some time after the date of his will regarded them as unprovided for? And if not, must the matter be left open during the ten or fifteen years which must elapse before the youngest child arrives at majority? Facts which would fully justify the court in finding that the testator was wholly dissatisfied with his will and regarded all of his children as unprovided for may exist, may be easily provable, and may be known to the devisee; but the court is called upon to proceed without them, and with no power or means of calling for

their production, except as its demand may be addressed to infants, who are incapable of caring for their own interests. True, there is a guardian *ad litem*, but he cannot be supposed to be in a position to make proof of such matters; and so the whole case of the children must go by default, unless there be no estoppel as to them.

But be these arguments good or bad, the long administration of the law as contended for by the respondents, and its evident purpose, constrain us to uphold the construction heretofore given it, and the judgment before us will, therefore, be affirmed.

HOYT, SCOTT and ANDERS, JJ., concur.