[No. 25254. Department Two. March 26, 1935.]

*In the Matter of the Estate of* JOHN FRANCIS MC-GOVERN, *Deceased.*

CASSIE B. MCGOVERN, *Individually and as Administratrix, Appellant,* v. EDWARD BURTON McGOVERN *et al., Respondents.*[1]

*Murphy & Kumm,* for appellant.

*Padden & Moriarty* and *Harvey W. McCormack,* for respondents.

MITCHELL, J.—This is a proceeding by Cassie B. McGovern, individually and as administratrix of the community estate of herself and her deceased husband, John Francis McGovern, to have her right in certain property that belonged to the partnership of McGovern & McGovern, of which the deceased was a member at the time of his death, ascertained and adjudged, and to have her right to the possession of it determined, and to subject the same to administration.

[1]Reported in 42 P. (2d) 796.

The defendant Edward Burton McGovern, the other member of the former partnership, contends that, by a bill of sale, John Francis McGovern, a few days before his death, for a valuable consideration, conveyed all his interest in the partnership property to the defendant, and that, at the date of the death of John Francis McGovern, neither he nor his surviving wife had any interest whatever in the property.

The trial without a jury resulted in a judgment upholding the bill of sale and denying the plaintiff any relief. She has appealed from the judgment.

All of the assignments of error go to the validity of the bill of sale.

The essential facts are about as follows: John Francis McGovern and the appellant were married in 1920, and lived together as husband and wife until his death. There was born to them one son, John Francis McGovern III, who, at the time of the trial of this action, May, 1934, was ten years of age. John Francis McGovern and Edward Burton McGovern were brothers, and in April, 1922, formed an equal partnership for the salmon-brokerage business in Seattle, which partnership continued until the death of John Francis McGovern on September 27, 1933. All property, real and personal, acquired by him and his wife, in any way connected with or related to this controversy, was community property.

The real property consisted of the family home of the approximate value of ten thousand dollars, on which there was an outstanding mortgage of $8,200. The community also owned household furniture appraised at $2,252.50, a part of which was subject to certain unpaid purchase price installments; and the community also owned cash in bank in the sum of $509.32; making a total value of $12,761.82. Creditors' claims against the estate have been filed in the sum

of about $16,550, including the mortgage on the real property and the balance due on the purchase price of the furniture. All the rest of the property consisted of the interest of John Francis McGovern and his wife in the partnership property of McGovern & McGovern, the bill of sale to which is the subject-matter of this suit.

In 1930, John Francis McGovern, using certain insurance policies that had been taken out by him subsequent to his marriage, instituted a trust, naming one of the Seattle banks as trustee, by which it was provided that, if his wife survived him, and upon collecting the insurance, the trustee should pay the indebtedness against the home, after which the net income from the trust fund should be paid to the widow monthly during her lifetime, and that, in case of sickness or special need, the trustee should, *at his discretion*, pay to, or use for her benefit, such portion of the principal of the trust estate as the trustee shall deem advisable, and thereafter the trust property to be used as provided for in the agreement for the benefit of the son, John Francis McGovern III. In this connection, however, whether material to this case or not, the evidence is overwhelming that the very most income this trust property can possibly produce is greatly less than the most urgent necessities of appellant.

It appears that, early in the summer of 1933, McGovern & McGovern decided to organize a corporation to which their partnership property would be transferred, so that their business thereafter would be conducted by and through the corporation. The corporation was formed in July, 1933, but none of the partnership assets had been conveyed to it at the time of the death of John Francis McGovern.

Early in the summer of 1933, the decedent became

afflicted with a serious physical ailment, which grew worse, and, notwithstanding admitted danger, he finally decided upon having a surgical operation performed. On August 30, 1933, he executed a will, afterwards admitted to probate, by which he gave to his brother, the other member of the partnership, all of his right, title and interest in and to all of the assets of every kind belonging to the firm of McGovern & McGovern; then, after making a bequest of two thousand dollars to his mother, his will makes his brother a residuary legatee, the property going to the residuary legatee to constitute a trust, the net income from which it was directed should be paid from time to time to the testator's widow, as in his brother's *"arbitrary and uncontrolled discretion he deems best;"* also upon the further condition that, if, *in the absolute and uncontrolled discretion of his executor,* the net income shall not be sufficient to provide for the needs of his wife and family, the executor is authorized and empowered, *but he shall in no event be required,* to expend for them portions of the principal as may be necessary *in his absolute discretion.* Subject to the conditions and provisions just mentioned, the trust property goes to his son, John Francis McGovern III.

The testator's brother, Edward Burton McGovern, was nominated as executor of the will and qualified as such upon the will being admitted to probate. Under our statutes, the will, of course, did not convey any interest of Mrs. McGovern in the community property of herself and husband in the partnership of McGovern & McGovern.

It does not appear that the testator, at the date of his will, had any interest in any property, community or otherwise, other than the family home and the furniture and the partnership property of McGovern & McGovern.

Six days after the execution of the will, that is, on September 5, 1933, he made and delivered to his brother, Edward Burton McGovern, the bill of sale involved in this action, purporting to convey all his right, title and interest in and to the assets of every kind and description belonging to the partnership of McGovern & McGovern. It is assumed by the parties to this action, and was so held by the trial court, that the property attempted to be conveyed by the bill of sale was one-half of the partnership property of McGovern & McGovern, the one-half thus conveyed being the community property of John Francis McGovern and his wife. The bill of sale was not filed for record until after John Francis McGovern died.

Ten days after giving the bill of sale, he entered the hospital, and on September 15, 1933, submitted to a major surgical operation and died in the hospital on September 27, 1933, as a result of the operation.

It appears that the fair market value of the assets of the partnership of McGovern & McGovern at the date of the bill of sale was approximately $49,000—it was so considered by the trial court—one-half of which was the community property of John Francis McGovern and his wife.

The bill of sale mentions a nominal and other valuable considerations. The real, purported consideration was the oral promise of Edward Burton McGovern that he would transfer all the interest he had acquired by the bill of sale, and all the interest he already possessed in the partnership, to McGovern & McGovern, a corporation, and would

". . . issue 25% of the stock of said corporation to J. F. McGovern III with the further provision that in the event of the dividends from McGovern & McGovern, a corporation, and the income and corpus of the trust fund were exhausted he would provide such

funds as were necessary to provide for the care, maintenance and education of J. F. McGovern III during his minority. That was to be the personal obligation of Edward Burton McGovern.''

The home property, if not taken by the mortgage upon it, may, above the amount in value of a statutory homestead, be subjected to the payment of community debts. So it appears that, if the bill of sale in question is valid as to Mrs. McGovern's interest in the property it purports to convey, then, without her knowledge or consent, she has been deprived of, not a contingent, but a vested, estate in all of the personal property she had, leaving her in possession of a home she will be unable to maintain. This has been done, it is asserted, under the power of the husband as the statutory agent of the community to dispose of all the community personal property of the husband and wife. Rem. Rev. Stat., § 6892 [P. C. § 1433]. Such a construction of the statute is not warranted.

Manifestly, the decedent knew he could not convey his wife's interest in the personal property by his will, and to allow him six days later to convey it by bill of sale would permit him to circumvent the statute of testamentary disposition of property. The statute, which is now Rem. Rev. Stat., § 6892 [P. C. § 1433], was construed in the early case of *Brotton v. Langert,* 1 Wash. 73, 23 Pac. 688, by declaring:

''This section discriminates in favor of one spouse only so far as is actually necessary for the transaction of ordinary business.''

In *Schramm v. Steele,* 97 Wash. 309, 166 Pac. 634, it was said: ''We are now clear that Judge Dunbar in the case of *Brotton v. Langert, supra,* stated the correct principle,'' upon referring to this section of the code. To the same effect, in the *Schramm v. Steele* case, it was further said that:

"The husband is made by the statute the manager, not the owner. His management and control include the power of disposition, but only for the community."

In *Stewart v. Bank of Endicott,* 82 Wash. 106, 143 Pac. 458, upon referring to the common law rule as announced in another state, to the effect that the husband could beggar himself and his family by disposing of all the personal property, if he chose to do so, for no corresponding benefit, upon the theory that, under the common law rule, the wife has no interest in the property, it was said:

"Our law is more just and humane. McKay, Community Property, § 314. As argued by the respondents, the purpose of § 5917 [now Rem. Rev. Stat., § 6892] is to give the management and control of the community personal property to the husband for the purpose of facilitating the business of the community. He can neither beggar his family nor use the community personal property to gratify a caprice to thwart the law, or for his own personal aggrandizement."

This holding was repeated with approval in *Marston v. Rue,* 92 Wash. 129, 159 Pac. 111, which emphasized the terse statement found in the definition in the *Stewart v. Bank of Endicott* case of the purpose of the powers given the husband, that it was for "facilitating the business of the community."

Some further argument in favor of the respondent rests on the oral conditional promise of the vendee to educate John Francis McGovern III, during his minority, the argument being that it is the duty of both parents, and hence of the community, to educate their son. No doubt, if an obligation had been undertaken by the parents to meet expenses of the son's education, the husband could have disposed of community personalty to meet that expense; but such is not the case here. Also, no doubt, if reasonable, the mother

could be compelled, and evidently would be willing, to meet the expenses of her son's future education, but not at the expense of her becoming a beggar; at least, such result must be brought about, if at all, by her own choice, and not by the choice of her husband claiming to act under a statute which gives him powers only for other purposes.

The sale by a husband, without the knowledge or consent of his wife, of all their community personal property in return for an oral promise of the vendee to use the income from it for the widow, within and according *to his absolute and uncontrolled discretion,* and to contribute to the future education of a son of the vendor and his wife, does not come within the power of the husband as statutory agent of himself and wife, as that statute has been already construed in this state. Mrs. McGovern has received no consideration for her interest in the community personal property attempted to be disposed of by the bill of sale.

Reversed, with directions to the trial court to enter judgment (1) setting aside the bill of sale; (2) determining that one-half of the partnership property of Mc-Govern & McGovern is community estate of the decedent and appellant; (3) that the community estate of decedent and appellant, including the partnership estate of McGovern & McGovern, should be administered by the appellant; and (4) directing the respondent to deliver possession of the partnership estate to appellant for administration.

STEINERT, HOLCOMB, BLAKE, and BEALS, JJ., concur.