[No. 26353. *En Banc.* December 6, 1937.]

OCCIDENTAL LIFE INSURANCE COMPANY, *Plaintiff*, v. MINNIE LOMBARD POWERS *et al., Appellants*, CORINNE LEONE POWERS, *Individually and as Executrix, Respondent.*[1]

[1]Reported in 74 P. (2d) 27.

476

*Cannon, McKevitt & Fraser* (*Frank J. Blade,* of counsel), for appellants.

*Dillard & Powell,* for respondent.

HOLCOMB, J.—This case was heard on stipulated facts in the lower court and here.

After the trial in the court below, that court rendered the following opinion, summarizing the facts and analyzing the issues and the law relating thereto:

"The salient facts in this action are admitted by the parties vitally interested and may be briefly summarized as follows: That on July 12, 1911, Corinne Leone Powers and Leon Frank Powers were married and continued to be husband and wife until the death of Mr. Powers on August 10th, 1935; that on August 15th, 1931, the American Medical Life Company, (which was afterwards succeeded by the plaintiff, The

Occidental Life Insurance Company) executed and delivered to Mr. Powers its policy of life insurance, Exhibit No. 9, whereby it agreed to pay the beneficiary named therein, viz., Corinne Leone Powers, his wife, the sum of $5,000 upon the death of the insured; that the policy contained a clause (10) giving the insured the right to name a new beneficiary at any time during the continuance of the policy; that the policy also contained a provision (11) wherein it was stipulated that the insured could receive every benefit, exercise every right conferred by the policy without the consent of the beneficiary; that the original cost and all the premiums on the policy were paid from community funds; that on December 5th, 1934, the insured in proper form, without the knowledge or consent of his wife, designated new beneficiaries, viz., Minnie Lombard Powers, his mother; and Fern Marie Safford, his private secretary, one-half to each and these were the beneficiaries designated in the policy at the time of Mr. Power's death.

"After his death, Mrs. Powers, the wife; Minnie Lombard Powers, the mother; and Fern Marie Safford, each made claim to the proceeds of the policy and as a result of the conflicting claims the insurance company, under the interpleader statutes, paid the amount due into court and it thereby becomes its duty to determine the rights of the claimants thereto.

"It is the contention of Mrs. Powers, the wife, that the whole sum must be awarded to her for the reason that the policy being community property, her husband could not give it or its proceeds away without her consent. In other words, she contends that without adequate consideration to the community therefor, her husband could not, without her consent, make a change of beneficiary. In addition, it is also her claim that the change of beneficiary on the part of the insured was in effect an attempt to make a testamentary disposition of their community property and not having the legal requirements of a will, it was, therefore, void.

"The community property system and the rights of the spouses in property, both real and personal, acquired during the marital relation have been settled

with reasonable certainty in this state. In *Marston v. Rue,* 92 Wash. 129, our supreme court uses this language:

" 'Now a wife's rights in family personalty are not of the contingent sort, like dower or survivorship, but a present estate. True, by our statute, the husband is made manager with full power to sell and dispose of this. But it does not follow that he can give it away. He is, so to speak, only the head of a firm. The personal property is just as much hers as his. The very statute that gives him sale power over the whole restricts his testamentary power to a half. Under our law she has helped to create it as much as he. Consequently, the idea is not to be tolerated that a husband can give away stocks and bonds or precious stones out of the family money. No part of those savings can he make gifts of against her consent, even to relatives, though mere trifles to the latter no doubt might be sustained under the rule of *de minimis.* The law cannot countenance his right to a wilful, premeditated waste of family personal property, which is now so often the bulk of an estate.'

"This decision was later amplified in *Schramm v. Steel,* 97 Wash. 309, where it is said:

" 'The husband is made, by statute, the manager, not the owner. His management and control include the power of absolute disposition, but only for the community. Else there is no such thing as a vested property right in the community as to any personal property, since the husband could give away all such property in any manner he pleased, except by will, at any time during the existence of the community. To hold that the whole substance of the term "community property" as applied to personalty consists in a mere contingent expectancy of the wife, would make of the term "community personal property," a palpable misnomer. It would take away every community element except the fact that a wife's labors and sacrifices had helped to earn it. It would destroy that equality which it is the obvious purpose of our community property law to conserve.'

"See, also, *Parker v. Parker,* 121 Wash. 24, *Nimey v. Nimey,* 182 Wash. 194, *Johnston v. Johnston,* 182

Wash. 573, *In re McGovern's Estate,* 181 Wash. 231.

"The substance of these decisions is: 1. That the wife has a vested interest in community personal property. 2. That while the husband has the management and control of the community personal property he is only a statutory agent of the community, and 3. That a husband does not have the power to make substantial gifts of community personal property without the consent of his wife.

"It is self-evident that a policy of life insurance upon the life of either spouse, resident of this state, when their community rights are to be determined, must necessarily be construed by the law of this state affecting such rights. That the policy in question is a community asset cannot be seriously disputed. The marital relation existed; the insurance was upon the life of the husband; the beneficiary was the wife; and the premiums were paid from the community earnings. It is true that the policy is in the form of an endowment, but this feature rather augments than detracts from the holding that it is community personal property.

"The policy represents the investments of community funds for the benefit of the wife and family, effective when and if the community is deprived of the earnings and support of the husband and father. But if the husband shall be living at the end of the endowment period and the policy is in force, the proceeds of its investment will be returned to the community. In other words, while this policy did not have all the attributes of an investment in stocks or bonds it did represent value in cash, present and future.

"Holding that a policy is property see *May v. Rudell,* 149 Wash. 393 at 398.

"What power, then, has the husband as statutory agent of the community over the policy? While the policy grants him the right to name a new beneficiary and 'freedom of control' yet this power can only be exercised for the benefit of the community. The law becomes a part of the contract and the provisions of the policy must be harmonized and interpreted so that there is no conflict between them and the law.

When this is done, we find that the husband as agent for the community may assign a life insurance policy as collateral security for a community debt without the consent of the wife; and, likewise, for an adequate consideration he may change the beneficiary without the consent of his wife.

"*Seattle Assn. of Credit Men v. Bank of Cal.*, 177 Wash. 130, *Johnston v. Johnston*, 182 Wash. 575.

"If a husband's right to change the beneficiary be not limited to transactions for the benefit of the community, a wife could easily be deprived of the bulk of a community estate. It is common knowledge that in many families a large portion of community savings are invested in various forms and types of insurance. If a husband could secretly substitute another beneficiary for his wife, she could be left penniless. A wife would certainly hesitate to lend her consent to the investment of community funds in life insurance if she could be so easily deprived of its benefits.

"I am not unmindful of the contractual relationship between the insurance company and the insured. As agent of the community, he obtained a policy on his life which gave him the right to substitute a new beneficiary at any time and it may be urged that the wife is estopped from contesting his exercise of that right. But, as is said in *Marston v. Rue, supra,*

" 'The burden of proof, to be sure, must be on the wife when she seeks to interfere. The presumptions are against her. She cannot act upon whim or take things into her own hands every time he goes out of town or snatch back an asset where there can be two minds on the question. But that in a plain case she must have redress either by damages or recovery of the thing itself from his fraudulent donees is undeniable, or we should be taking the statute away from her. On this we said that, while in a common law jurisdiction a court had been compelled to acknowledge that the husband could beggar the wife by giving away the personal property, he could not do it here.'

"Under the stipulated facts, the wife has sustained her burden of proof. It appears that without any con-

sideration to the community, and without her knowledge and consent, her husband transferred a community asset, which constitutes in law a fraud upon her rights.

"I have examined many cases which may be considered as throwing light upon this question. In *Schade v. Western Union Life Insurance Co.,* 125 Wash. 208, the change of the beneficiary from the wife to the Spokane & Eastern Trust Co. without her knowledge and consent was sustained as valid for the reason that the community received a valuable consideration of an extension of time in which to pay a community debt and that the proceeds were applied in payment of such debt. In other words, it was held she derived a benefit.

"In *Mutual Benefit Life Insurance Co. v. Lundquist,* 140 Wash. 345, there was no change of beneficiary involved but the wife was seeking the proceeds of life insurance policies payable to her husband's sister and mother. The right of the beneficiaries to recover was sustained because it was held that the premiums were paid from the separate funds of the husband.

"The case of *Koch v. Aetna Life Insurance Co.* involved the right of a single man to change the beneficiary under a group insurance policy issued to his employer.

"The case of *Cade v. Head Camp W. O. W.,* 27 Wash. 218, apparently upholds the right of the insured to change the beneficiary. The gist of the decision is that husband who, as a member of the benefit society, procures a policy of insurance on his life in which his wife is named as a beneficiary, paying dues thereon with community funds, may, without the knowledge or consent of the wife, lawfully substitute another beneficiary. This, on the ground that she acquired no vested interest in the policy. But this decision is not controlling and must be considered in the light of later developments and the clarification of our community property laws whereby it has been definitely settled that the wife has a vested interest in all community personal property.

"Counsel for the substituted beneficiaries has cited

a case from California almost squarely in point on the facts. This is the case of *New York Life Insurance Co. v. Bank of Italy,* 214 Pac. 61. It has been followed in a number of California cases.

"See *Dixon Lumber Co. v. Peacock,* 19 P. (2d) 233; *Travelers Ins. Co. v. Fancher,* 20 P. (2d) 1004; 26 P. (2d) 482; *McBride v. McBride,* 54 P. (2d) 480.

"The substance of the rule there announced is as follows: Where premiums of an insurance policy on the life of the husband after marriage are paid from community funds, the policy becomes a community asset; the designation of a beneficiary initiates in a beneficiary's favor an inchoate gift of the policy proceeds, which if not revoked by the insured prior to death, vests in the beneficiary at the time of insured's death; the husband may not make a gift of the entire community property without the consent of the wife; if the husband without knowledge and consent of the wife, without consideration, substitutes a new beneficiary, the designation is a gift and as respects the wife's share or one-half of the policy proceeds, is invalid; and her community share belongs to her in her own right and not as executrix of the estate. In other words, it is held that if the right is given to the husband to, and he does, change the beneficiary, without the latter's consent, his act in so doing constitutes a gift to the new beneficiary to the extent of the husband's community interest in the policy, but the husband cannot in this matter, without the consent of the wife, bestow upon the new beneficiary the community interest of the wife. I would be inclined to follow these cases as an authority in deciding the issue presented were it not for the fact that in California the settled property rule is that the wife, while living with her husband, has a mere expectancy and not a genuine interest, in community property.

"*Roberts v. Wehmeyer,* 218 Pac. 22.

"In this connection, see the cases of *United States v. Robbins,* 269 U. S. 315; 46 S. Ct. Rep., 148; and *Poe v. Seaborn,* 282 U. S. 101; 51 S. Ct. R., 58, in which the community property laws of the State of Washington and the State of California are compared and distinguished. It is clearly pointed out that in

California the wife has no vested future interest in half of the community property, but has only a possible interest in whatever remains on dissolution of the community, otherwise than by her own death. And that the property rights of the husband during the life of the community were so complete that he was in fact the owner. In Washington the husband's power of control over community property does not amount to ownership of the entire property, the wife having equal vested interest therein.

"It seems to me that this difference of the interest which the wife has in community personal property is the vital distinguishing feature. The mere expectancy of the wife and the extent of the control of the husband sustain the reasoning of the California decisions in holding his act in changing the beneficiary constitutes a gift to the new beneficiary of his community interest in the policy effective upon his death. But in this state, the wife having an absolute vested interest in the community personal property, such vested interest prevents the husband from making a substantial gift thereof without the consent of the wife. In other words, in Washington such a gift is void as to the whole of the property; in California the entire gift is not a nullity, but is subject only to the wife's right to have it revoked as to the half to which she would be entitled upon his death.

"My determination of the main issue renders it unnecessary to pass upon the question of whether or not the attempted disposition of the proceeds of the policy by a change of beneficiary was a testamentary disposition of such property.

"I feel compelled to hold that Corinne Leone Powers, the wife, in her own right is entitled to all of the proceeds of the policy. Judgment accordingly."

On appeal, the sole question presented by appellants is whether, when the premiums on a life insurance policy originally payable to the wife, insuring the husband's life, are paid with community funds and the policy contract in express terms gives the insured the right to change the beneficiary without notice to

or consent by the original beneficiary, and the insured carries more than an equal amount of other insurance naming his wife as beneficiary, and by his will leaves all the community property to his wife, can the designation by the insured of a person other than his wife as the new beneficiary be set aside and held for naught?

■ We concur with the opinion of the trial judge and his analysis of our cases, including *Cade v. Head Camp, W. O. W.,* 27 Wash. 218, 67 Pac. 603, and *Koch v. Aetna Life Ins. Co.,* 165 Wash. 329, 5 P. (2d) 313, strongly relied upon by appellants. To these may now be added *Massachusetts Mutual Life Ins. Co. v. Bank of California,* 187 Wash. 565, 60 P. (2d) 675, a case not published when the trial judge rendered his opinion, in which we reiterate our pronouncement that life insurance during the life of the insured forms a reserve to be drawn upon in times of stress and is in a true sense property.

In the *Koch* case, *supra,* the wife was dead. The decisions in the *Cade* and *Koch* cases, *supra,* must be limited to the kind of contract and issues involved in those cases. In this state, insurance or the proceeds of insurance are not mere expectancies or choses in action, but are property; and if the premiums are paid by the assets of the community, they constitute community property.

The rights of the spouses in this state in and to community property are different than those in California and other community property states, as shown by the cases cited, in the opinion of the trial judge, from the United States supreme court. In this state, as stated in those cases, and as has always been stated by this court, the wife has a vested property right in the community property equal with that of her husband and in the income of the community, including

salaries or wages of either husband or wife, or both. In California and some other states, the wife does not have such vested right, but has only a secured right to a moiety until dissolution of the community. That has been the uniform rule in this state from *Holyoke v. Jackson,* 3 Wash. Terr. 235, 3 Pac. 841, to *Bortle v. Osborne,* 155 Wash. 585, 285 Pac. 425, 67 A. L. R. 1152.

In *Marston v. Rue,* 92 Wash. 129, 159 Pac. 111, we stated that

"The idea is not to be tolerated that a husband can give a mistress stocks and bonds or precious stones out of the family money. No part of those savings can he make gifts of against her consent, even to his own relatives, . . ."

See, also, *Parker v. Parker,* 121 Wash. 24, 207 Pac. 1062.

Appellants also contend, as they did in the court below, that the changing of the beneficiary in a life insurance policy amounts to a testamentary disposition within the meaning of Rem. Rev. Stat., § 1342 [P. C. § 9848]. That contention is untenable.

"The only way in which a deceased person can dispose of property in this state is by will. The term 'testamentary disposition' is used in both the law of the property rights of married persons (Code of 1881, § 2411), and the law of descent of real property (*Id.,* § 3303; Gen. Stat., § 1481), but the meaning is 'disposition by will.' The very same statute, which used the words 'testamentary disposition,' also used the word 'will' in a negative way to convey the same meaning. Code 1881, § 2409. But, without this, the common usage the world over is to employ the words 'will,' 'testament,' and 'last will and testament,' as exactly synonymous." *Hill v. Hill,* 7 Wash. 409, 35 Pac. 360.

To the same effect in principle are *Rhines v. Young,* 97 Wash. 437, 166 Pac. 642; *Buckner v. Ridgely Protective Ass'n,* 131 Wash. 174, 229 Pac. 313; *Bartlett v.*

*Bartlett,* 183 Wash. 278, 48 P. (2d) 560; *In re Chambers' Estate,* 187 Wash. 417, 60 P. (2d) 41.

A case quoted in full and much relied upon by appellants, *Shields v. Barton,* 60 F. (2d) 351 (C. C. A., 7th Circuit), does not correctly determine the law of this state as stated in the foregoing citations. That case did not have the benefit of any counsel except from Chicago, who were unfamiliar with our law governing community estates, wills and testamentary disposition. The writer of that opinion lamented that there was no decision of the Washington supreme court to aid them. There were, but they were not cited there. *Young v. O'Donnell,* 129 Wash. 219, 224 Pac. 682, does not aid appellants. Nor does *New York Life Ins: Co. v. Bank of Italy,* 60 Cal. App. 602, 214 Pac. 61, a decision upon different issues or statutes and concerning a different status of the community property law of California affecting the spouses.

Two other questions, not presented to the lower court, but suggested from the bench here at the oral argument, require some further discussion.

The first question suggested was whether a segregation might be made of the rights acquired under a policy of life insurance along the lines of segregation for inheritance tax purposes set forth in the act of 1935 (Laws of 1935, chapter 180, pp. 784, 785; Rem. Rev. Stat. (Sup.)', § 11211-b [P. C. § 7030-175]). The general provision of that act makes life insurance in excess of forty thousand dollars a part of the estate for purposes of computing inheritance tax. Under policies upon the life of a decedent officer or employee of a corporation or partner in a business enterprise where the premiums are paid exclusively by the beneficiary, the statute excepts from such tax the amount of the "cash surrender value" of the policy immediately prior to the death of the decedent. It

was suggested that the legislature has by statute differentiated between "cash surrender value" and "proceeds of life insurance" payable at the death of the insured; in other words, that where, as here, the premiums on life insurance policies have been paid from community funds, then the "cash surrender value" at the date of the death of the insured husband constituted "tangible personal property," and that the proceeds payable in excess of "cash surrender value" are subject to the rule announced in the *Cade* case, *supra*. Whether it be considered that the "cash surrender value" is different from the proceeds at the time of the death of the policy holder of the life insurance, the result is the same. Both have been paid for with community funds.

The "cash surrender value" always represents an amount less than the premiums paid. The benefits and proceeds of life insurance policies were paid for by community funds. Since we hold that they are property and, being paid for by community funds, are community property, no sound distinction can be made between the two terms under that statute.

The other question made from the bench was as to the effect of the pauper statute, Rem. Rev. Stat., § 9982 [P. C. § 1694], which, so far as material, reads:

"Every poor person who shall be unable to earn a livelihood in consequence of bodily infirmity, idiocy, lunacy, or other cause shall be supported by the father, grandfather, mother, grandmother, children, grandchildren, brothers, or sisters of such poor person, if they or either of them be of sufficient ability; . . ."

The suggestion thus made tentatively was that the law might impose the duty on the son to support the mother which would be a community obligation which would legally justify the son in naming the mother as beneficiary in an insurance policy belonging to the community.

On due reflection, there is no force in that suggestion. The statute by its terms imposes the obligation to support an indigent mother only on the son. Nowhere is evidenced any intent to charge such liability against the community created by the marriage of the son. However strong the moral duty may be, there was no such obligation at common law. It is purely a statutory obligation, and the procedure provided for its enforcement by statute is exclusive. *Moss v. Moss,* 163 Wash. 444, 1 P. (2d) 916.

"The statutory liability of one relative to support another exists only during the former's lifetime and does not deprive him of the right to dispose of his property by will without providing a maintenance for the latter, and such liability does not continue as a claim upon his executor or against his estate." 48 C. J. 509.

The husband in his capacity as manager of the community is manager essentially of a business concern and must be controlled by his statutory authority. *Sun Life Assurance Co. v. Outler,* 172 Wash. 540, 20 P. (2d) 1110.

We conclude that the judgment of the trial court was right and is affirmed.

BLAKE, ROBINSON, and SIMPSON, JJ., concur.

MILLARD, J. (concurring in the majority opinion)— It is argued in the dissenting opinion that, as a man is required to pay from the community property of himself and his second wife for the support of his children by a prior marriage, and, as under the statute, one may be required to support certain persons related to him by consanguinity, if such persons are unable to earn a livelihood because of bodily infirmity, etc.,

"It must be the law that, if a man and a woman marry, each takes the other, to some extent at least,

*cum onere,* with the understanding that there may be certain demands based upon blood relationship which will have to be met out of community earnings. To hold that before a man can assist his children or his parents who are in need he must procure the formal consent of his wife, would, it seems to me, frequently result in an intolerable situation."

However desirable it might be, or however strong the wish may be, to have the law as the dissenting opinion recites "it must be," the answer is that the law is *not* what the dissenting judges desire or wish it to be. Any question as to the right of a husband to dispose of community property without the consent of his wife is foreclosed by *Marston v. Rue,* 92 Wash. 129, 159 Pac. 111, in which we held that the husband cannot of the community property make gifts against his wife's consent, *even to his own relatives,* although mere trifles may be given by him to the latter under the rule of *de minimis.* That rule was followed in *Parker v. Parker,* 121 Wash. 24, 207 Pac. 1062, where we held that a husband could not, without the consent of his wife, make a substantial gift of community property to his sister.

Until the legislature amends the law or until this court overrules *Marston v. Rue, supra,* and *Parker v. Parker, supra,* under our community property law a husband cannot, without the consent of his wife, make a substantial gift of community property to his mother.

When a man and woman marry in this state, each takes the other charged with knowledge of our community property law. So far as the assistance of one's needy children or indigent parents is concerned, it should be remembered that, at the common law, there is no legal liability resting on one relative to support another, however strong the moral duty may be. The duty of providing such support is purely statutory,

and the procedure providing for its enforcement is exclusive. *Moss v. Moss,* 163 Wash. 444, 1 P. (2d) 916.

"Although the duty of supporting the poor is a public duty, yet it is not a purely public burden. The theory of the law is that the primary duty of affording support to a poor and helpless person rests on those on whom, because of consanguinity, is imposed a natural and moral, though imperfect, duty to relieve and maintain, and that, so long as such primary duty exists and can be enforced, the public should be exonerated from the burden. Within what degree of consanguinity the primary liability shall be on the relatives of the pauper instead of the public is largely a matter for legislative determination. The common law, however, went no further than to impose on husbands the duty of supporting their wives, and on parents the duty of supporting their minor children, though in the case of children so weak mentally as to be unable to support themselves, the duty of the parent does not cease on the majority of the child. It may be said that persons are by the law of nature bound to provide for those in close consanguinity to themselves, who may be in want, but since the law of nature provides no means of enforcing the duty, the matter was early taken up by statute and is now universally so taken care of. The statutes are generally declaratory of the law of nature already existing and are limited to kindred by consanguinity. Even a statute not expressly so limited will not be construed to include relations by affinity, and it is doubtful whether an act providing for the support of persons beyond the realm of moral duty would be constitutional. Such statutes do not embrace illegitimate children within their provisions." 21 R. C. L. 723.

In the dissenting opinion, it is argued that the relationship of parent and child is founded "upon the laws of nature itself," and that, when a man marries a second time, he can be required to support his child by a prior marriage from the community property of the second marriage.

The relationship of parent and illegitimate child is also founded "upon the laws of nature itself," yet, in the absence of a statute, such children are not within the class the parent is required to support. Our statute (Rem. Rev. Stat., § 9981 [P. C. § 1693] *et seq.*), under which one may be required to support relatives who are unable to earn a livelihood, does not expressly or impliedly modify or limit our community property law, the dissenting opinion to the contrary notwithstanding. Neither at the common law nor under any statute of this state may a son be required to contribute from the community property for the support of an indigent parent or for the support of any person except a minor child. When a woman marries a man who has children by a former marriage, she takes him "*cum onere,* with the understanding" that there is imposed upon her husband the duty, even at the common law, to support his minor children and that the community property must pay for such support. While a son may be required to contribute to the poor of the county thirty dollars monthly, if he fail to provide for an indigent parent, there is nothing in the statute which authorizes exaction of that contribution from the community property of the son and his wife.

A woman who marries a divorced man who is required by the divorce decree to pay a stipulated amount at stated intervals for the support of his divorced wife and the children of himself and that divorced wife, takes that divorced man, "*cum onere,* with the understanding," with knowledge of the law that the prior claim which must be satisfied from the community property of herself and that divorced man if he cannot satisfy that obligation from his separate property.

It is argued that, by excepting a married female

while her husband is alive from suit (Rem. Rev. Stat., § 9983 [P. C. § 1695]), for collection of the statutory payment for support of certain indigent relatives, "the statute by strong implication subjects a married man to such action." Not so. A statement of the argument carries its own refutation. If a female is unmarried, the legal liability may be imposed; but if she is married, there is no liability during the time her husband is alive. A complete answer to the argument that, "Doubtless, the payment required by this statute could be collected out of community property," is that *this statute*" *does not so provide,* and the question is foreclosed by our community property law and *Marston v. Rue, supra,* and *Parker v. Parker, supra.*

The judgment should be affirmed.

BEALS, J. (dissenting)—In my opinion, the judgment appealed from should be reversed, at least as to Minnie Lombard Powers, the mother of Leon Frank Powers, the insured. I am fully aware of the difficulties presented in the question to be here determined, but I am convinced that the rule laid down by the majority is too broad, is not supported by law or reason, and that the effects of this principle will be most confusing, and will lead to most unfortunate results.

I adhere to the doctrine that a husband cannot dispose of community personal property in ways which are essentially inimical or adverse to the interests of the community, and I adhere to the doctrine laid down in the decisions of this court in the cases of *Marston v. Rue,* 92 Wash. 129, 159 Pac. 111; *Schramm v. Steele,* 97 Wash. 309, 166 Pac. 634; *Parker v. Parker,* 121 Wash. 24, 207 Pac. 1062; *In re McGovern's Estate,* 181 Wash. 231, 42 P. (2d) 796, 46 P. (2d) 1118; and *Nimey v. Nimey,* 182 Wash. 194, 45 P. (2d) 949. I am also of the view that, saving the question that a policy of fraternal insurance has no cash surrender value, the

opinion of this court in the case of *Cade v. Head Camp, W. O. W.,* 27 Wash. 218, 67 Pac. 603, is no longer authority, as, when that decision was rendered, under the cases of *Powell v. Pugh,* 13 Wash. 577, 43 Pac. 879, and *Gund v. Parke,* 15 Wash. 393, 46 Pac. 408, the husband had greater rights in the disposition of community personal property than he now has, under our more recent decisions.

I am in accord with the majority in holding that the designation of a beneficiary in a policy of life insurance is not a testamentary disposition of the proceeds thereof, and that life insurance, at least outside of policies which have no cash surrender value, is property.

However, I am not in accord with the majority in holding that a man may not, under any and all circumstances, take out life insurance in favor of a dependent parent, paying the premiums out of community funds, and thereby, without the consent of his wife (and such consent might be void for want of consideration), protect such parent. Under the majority decision in this case, it might well be argued that a man could not take out life insurance in favor of his own dependent child by a prior marriage, and it might even be contended that he could not take out such insurance in favor of an adult child of the existing marriage, paying for such insurance with community funds.

The relation of husband and wife is of the greatest importance, both to the individuals and to the community at large, but it is not the only relation which is important, or which is favored and protected to the utmost by the law. The relationship of parent and child is one not founded upon contract, but upon the laws of nature itself, and is entitled to equal, and sometimes even greater, consideration than that of

man and wife. I have never heard it contended that a man may plead, as a defense to a claim that he must support his child by a prior marriage, that he has remarried, that his earnings are the community property of himself and his wife, and that, for that reason, he cannot be required to support his children out of such earnings. The later marriage must be considered to some extent in determining the amount that the father must pay, but he must still support his children.

It must be the law that, if a man and a woman marry, each takes the other, to some extent at least, *cum onere,* with the understanding that there may be certain demands based upon blood relationship which will have to be met out of community earnings. To hold that, before a man can assist his children or his parents who are in need, he must procure the formal consent of his wife, would, it seems to me, frequently result in an intolerable situation. If the husband cannot, out of community funds, pay for insurance in favor of a parent, he cannot pay for rent, fuel, food, or clothing needed by a parent. The rule laid down by the majority applies with equal force to a millionaire or a man in moderate, or even straitened, circumstances.

While it is proper to hold that a man cannot give community property to his mistress (*Marston v. Rue, supra*), or subject the community property to liability for his wrongful act in alienating the affections of the wife of another man (*Schramm v. Steele, supra*), or make a gift to his sister of a considerable amount of community property (*Parker v. Parker, supra*), in all of these cases it clearly appeared that the action of the husband was essentially adverse and antagonistic to the interests and welfare of the community. In my opinion, the correct rule is that an expenditure by

the husband, reasonable in amount, in view of all of the circumstances of the case, for the benefit of a parent or a child in need of assistance, is not inimical or adverse to the community, but is in furtherance of its true interest, and that the right to make such a provision should be upheld.

In some of the cases cited, it has been intimated that a husband may make gifts out of the community personal property if limited to "mere trifles," or to gifts not substantial in their nature. In *Marston v. Rue, supra,* the court said:

"Consequently the idea is not to be tolerated that a husband can give a mistress stocks and bonds or precious stones out of the family money. No part of those savings can he make gifts of against her consent, even to his own relatives, though mere trifles to the latter no doubt might be sustained under the rule of *de minimis.*"

In the case of *Parker v. Parker, supra,* we find the following:

"The law which gives the husband the management and control of the community personal property does not give him the right to make substantial gifts thereof against the consent of the wife."

In *Nimey v. Nimey, supra,* the court said:

"If John did give or attempt to give to his mother the money drawn from the Spokane & Eastern bank, which was the community property of himself and wife, the attempt would be futile, because, while the husband has the management and control of community personal property, he does not have the right to make substantial gifts thereof without the consent of his wife."

What amounts to a "substantial" gift, necessarily depends upon the amount of community property and the earnings of the husband. What might well be a substantial gift, and obnoxious to the rule, out of a

community estate of ten thousand dollars would be a mere trifle out of an estate of a million dollars.

Our community property law has been in force in this jurisdiction for many years, and on the whole has proven satisfactory, in that it has protected the wife to a far greater extent than did the common law doctrine of dower, or the statutes of many other jurisdictions. The law, however, should not be regarded as an idol, upon whose altar every blood relationship, no matter how close and sacred, must be sacrificed.

It seems to me that Rem. Rev. Stat., § 9982 [P. C. § 1694], quoted in part in the majority opinion, which provides, *inter alia,* that a parent shall be supported by a child, and that the county may recover thirty dollars a month for the use of the poor of the county, if the order of the board of county commissioners to furnish support be disregarded, has some bearing upon the question here presented. Doubtless, the payment required by this statute could be collected out of community property, and by § 9983 [P. C. § 1695], a wife is expressly exempted from an action by the county to collect the statutory payment. By excepting the wife from liability to suit, the statute by strong implication subjects a married man to such action. Of course, as stated by the majority, the responsibility ceases at the son's death, but during his life it would seem that the statutory responsibility transcends the community rights of the wife.

If a father can be compelled to support, out of community personalty, his children by a former marriage, and may be sent to jail if he refuses to do so, and if a son can be required to contribute to the poor of the county thirty dollars a month if he fails to provide for an indigent parent, how can it be contended that the brand "community property" exempts all such personalty from liability for such a responsibility?

If the law be as laid down by the majority, a ridiculously illogical situation is presented. A man, even of most moderate means, with a completely dependent wife and large family of small children, may by will (subject to the claim of his wife for three thousand dollars and support during administration) leave his half of the community estate to an utter stranger, while a multimillionaire, whose wife may be rich in her own right, cannot take out a thousand dollar policy of insurance in favor of his aged mother.

As I read the majority opinion, a wife, who might be so disposed, could maintain an action in replevin against her parents-in-law and recover articles necessary to their comfort which her husband might have given them, irrespective of the amount of the community estate and of the fact that the wife was being supported in comfort, or, indeed, in luxury. No such doctrine should be declared, unless absolutely required by the statute, and certainly the letter of the law requires no such construction. The statute does not purport to cover such a question as this; we have to consider only the law as it has been interpreted by our decisions.

The case at bar was submitted to the trial court upon an agreed statement of facts, which contains no statement concerning the financial condition of Minnie Lombard Powers, Dr. Powers' mother. She, however, was sworn as a witness on her own behalf, and from her testimony it appears that she is a widow, seventy years of age; that, while she owns her own home, she is dependent; and that her son had extended to her financial assistance for some time prior to his death. It clearly appears, then, from the record that Mrs. Powers was dependent, at least to a considerable extent, upon her son, and that she urgently needs the provision which he made for her by way of life in-

surance.  Dr. Powers' widow has received six thousand dollars under another life insurance policy carried by her husband, and by his will he left her all of his estate.

It may happen that the refusal of a wife to permit the appropriation of any community funds to the maintenance of the husband's parents would result to the great detriment of the community interest. Certainly, if a husband of ample means allowed his parents to live in want of the necessities of life, this fact would be detrimental to his standing in the community, and would result in injury to his profession or business.  As I understand the opinion of the majority, it embodies the rule that, no matter how wealthy a husband may be, and entirely irrespective of the financial condition of the wife, the husband cannot, without the consent of the wife, give any community property to his family, no matter how much they may need assistance.  In my opinion, this places an unwarranted limitation upon the provisions of Rem. Rev. Stat., § 6892 [P. C. § 1433], which provides, *inter alia,* that

"The husband shall have the management and control of community personal property, with a like power of disposition as he has of his separate personal property, except he shall not devise by will more than one-half thereof."

It should be held that this section vests the husband with the legal right to devote some portion of his earnings to the benefit of his parents, they being in need, and he at all times exercising good faith toward the community interests, of which he is the statutory manager.  I desire, however, to emphasize the statement heretofore made, to the effect that the husband's duty to the community comes first, and that any gifts which he may make to his parents must be reasonable in amount, in view of all the circumstances of

the particular case, and no wise in fraud of the wife's interests.

In the case at bar, under all the circumstances disclosed from the record, I am of the opinion that Dr. Powers had the right to take out insurance upon his life in favor of his mother in the amount of two thousand five hundred dollars and pay for such insurance out of community funds, that his act was not a fraud on the community, and that appellant, Minnie Lombard Powers, is entitled to receive the proceeds of the policy of insurance upon the life of her son.

It seems to me that this court should lay down the rule that a son may, out of community funds, pay for a policy of life insurance in favor of a parent, if, under all the circumstances of the case, it appears that the parent needs such protection, and that the amount and cost of the insurance are reasonable, in view of circumstances such as the amount of the husband's income, the value of the community property, and the necessities of the wife and family.

While I am of the view that, in furtherance of the community business, a man may insure his life in an amount which, under all the circumstances, appears reasonable, in favor of a faithful and industrious employee, and that, in the case at bar, Fern Marie Safford should also receive the amount payable to her under the policy of insurance on Dr. Powers' life, I do not think that the principle which controls that phase of the case is of such fundamental importance as that which governs the insurance in favor of the mother. It is certainly for the advantage of the community that the husband's employees realize that he is mindful of their interests. Of late years, many employers have taken out group insurance for their employees. While it is probable that most of such employers are corporations, the advantages of such a

plan have probably appealed to some individuals. Doubtless, in such a case, the courts would even more closely scrutinize the facts and take into consideration the financial condition of the wife; but I am convinced that, in proper cases, the husband could make expenditures for insurance for the benefit of a faithful employee.

In no case is a gift of such protection by way of life insurance a gift of the face value of the policy. It is merely a gift in an amount equal to the premiums paid, and under no circumstances should a wife be allowed to recover out of the policy an amount greater than a sum equal to the premiums expended out of community funds.

Much of that which I have written in stating my disagreement with the conclusion reached by the majority has been by way of illustration of the evils which I believe inhere in the principle laid down. The majority opinion, if followed to its logical conclusion, will, it seems to me, lead to unjust results and overturn established principles of public policy. In my opinion, the rule should be laid down that a husband may, during coverture, take out and pay for, out of community funds, a policy of insurance on his life in favor, at least, of parent, child, and in proper cases, a near and dependent relative, or may, out of community funds, pay premiums on such a policy which he may have taken out before marriage, unless it be held that such payments on his part constitute a fraud upon the wife or community. In the instant case, I am convinced that the judgment of the superior court is wrong, and should be reversed, and for the reasons stated, I dissent from the conclusion reached by the majority.

STEINERT, C. J., MAIN, and GERAGHTY, JJ., concur with BEALS, J.